GLADNEY, Judge.
The issues on this appeal relate to the question of whether or not Raymond Burl Hilton was legally adopted in 1923 by Burl Oliver Hilton and Myrtle Mae Howard Hilton. After the death of Burl Oliver Hilton February 22, 1955, his succession was opened and Raymond Burl Hilton appeared therein to claim entitlement to the estate as an adopted son and sole heir of the deceased. In opposition to this claim collateral heirs of the deceased interposed an exception of no right of action based on grounds that it was not alleged the purported act of adoption was by written act as required by the law prevailing at that time and it was not alleged that if said act of adoption was in writing all available executed copies thereof had been destroyed or lost. The exception was referred to the merits of the case and upon trial the court received evidence indicating the adoption had been effected through written act but no copies thereof were available, all having been lost or destroyed. At the trial the court, over strenuous objections of counsel, admitted parol evidence for the purpose of proving adoption and rendered judgment recognizing Raymond Burl Hilton as having been legally adopted and entitled to inherit from Burl Oliver Hilton. An appeal was then taken to this court where it was considered and then remanded to the trial court for the admission of additional evidence to establish the age of Burl Oliver Hilton and to disclose whether or not a copy of the purported act of adoption could be located in the files of the late John F. Phillips. (165 So.2d 332). The case was accordingly reopened by the trial court and, after receiving evidence in accordance with the directions of this court, the original judgment was affirmed. This appeal was perfected.
The appellants herein, present two issues for our consideration. These are: First, can secondary or parol evidence be offered to establish an instrument where it is neither alleged nor proven that the original and all copies thereof are lost or destroyed? Second, under the circumstances of this case, is secondary or parol evidence admissible to prove the purported instrument of adoption as to the execution and contents of such an instrument in compliance with the law then in effect?
The evidence adduced in the trial court subsequent to the remand conclusively, proves documents or papers purporting to effect the adoption of appellee have been lost or destroyed. It was likewise established on the second trial that at the time of the adoption Burl Oliver Hilton, the adopting father, was over the age of 21 as required by Act 31 of 1872, the statute then in effect providing for adoption.
It is first argued by appellants that the evidence is insufficient to establish the loss or destruction of the original and copies of the document sought after. This case was remanded as we entertained some doubt as to the nonexistence of a copy which the record indicated might be found in the files of Mr. Phillips.
The decision in Lyons v. Goodman, La. App., 78 So.2d 424 (1st Cir. 1955) has dispelled any doubt that parol evidence máy be offered in lieu of a formal written instrument for the purpose of proving an adoption when the original and copies of the instrument have been lost or destroyed. It is indicated that a paper which Mrs. Hilton considered as an act of adoption was signed by the interested parties in triplicate originals. One of these was left with the Charity Hospital, one was given to Mrs. Myrtle Mae Hilton and the third retained by Mr. Phillips, attorney and notary public, who acted in behalf of Mr. and Mrs. Hilton. Mrs. Phillips, who had been the last custodian of such files, testified the copy retained by her husband had been destroyed by her. We find also that the evidence conclusively shows loss or destruction of any documents which may have been in the possession of the Charity Hospital and Mrs. Hilton. There cannot be any doubt, therefore, that if in truth an act of adoption was executed, all copies *368 have been lost or destroyed. It was proper for the trial court to receive parol evidence for the purpose of establishing, the legality vel non of the adoption.
The argument next advanced by counsel for appellants is that strict compliance with .the provisions of law relating to adoptions must be shown. This presents the question of whether the evidence is sufficient to establish compliance with statutory provisions authorizing the adoption. Raymond Burl Hilton takes the position that he was legally adopted on January 18 or 25 of 1923 by virtue of the provisions of Act 31 of 1872. This statute provides:
“That any person above the age of twenty-one years shall have the right, by act to be passed before any parish recorder or notary public, to adopt any child under the age of twenty-one years; provided, that if such child shall have a parent or parents, or tutor, that the concurrence of such parent or parents or tutor shall be obtained, and as evidence thereof shall be required to sign said act.”
The Legislature by Act 46 of 1932 in superseding notarial by judicial adoption proceedings sought to confirm and validate previous adoptions with the following provision:
“Section 13. That any and all adoptions heretofore made, be and they are hereby confirmed, approved and validated, and that any action to set aside or annul any act of adoption made prior to the passage of this act shall be prescribed after the lapse of six months from and after. the promulgation of this act; but this prescriptive period shall apply solely to actions having the purpose' of setting aside and annuling acts of adoption by reason of such adoption not having been effected by an authentic act, but by private act before witnesses and acknowledged, or that all necessary parties did not sign the act of adoption.”
Burl Oliver Hilton and his first wife, Myrtle Mae Howard Hilton, obtained custody of Raymond Burl Hilton, born January 9, 1923, at the Charity Hospital in Shreveport on January 25, 1923 when the purported act of adoption was executed. Of those present on that occasion only Mrs. Hilton survived and testified in the case. Mr. and Mrs. Hilton were married in 1918 and divorced during the year 1928. At the time of the divorce Mr. Hilton acquired the legal custody of Raymond Burl Hilton and thereafter continued rearing him as his own son. Raymond Burl Hilton was not aware of the fact that he was not the natural child of Burl Oliver Hilton and Myrtle Mae Hilton until after the death of Burl Oliver Hilton when he was so informed by a brother of Burl Oliver Hilton. Appellee testified that when he learned he was not a natural child of the deceased he endeavored to establish the identity of his mother and learned from his birth certificate that he was the child of Lucy Welch and the name of his father unknown. His search to locate his mother was without success.
Mrs. Myrtle Mae Hilton testified no children had been born of her marriage and that she and the decedent, Burl Oliver Hilton, had wished to adopt a child and accordingly had consulted Judge Barnette of the Juvenile Court and the local Red Cross concerning the matter; and that after locating a child Mr. John F. Phillips, an attorney, was instructed to prepare legal papers of adoption. Accompanied by Mr. Phillips she and her husband went to the Charity Hospital in Shreveport on January 18, 1923 (the records of the hospital show that on January 25, 1923 the child was discharged) where they met with the child’s mother, Lucy Welch, a nurse and a doctor. She further testified:
“Q Did any other — Did you or Mr. Milton have any papers with you, or did Mr. Phillips have any papers that you know of?
“A We did. Mr. Phillips had them.
*369 “Q What kind of papers were they, Mrs. Hilton?
“A Adoption papers.
******
“Q Did you sign the papers after you got to the Hospital ?
“A I did.
“Q Did Mr. Hilton sign the papers?
“A He did.
“Q Did Mr. Phillips sign the papers?
“A He did.
“Q Was Mr. Phillips a lawyer and a Notary Public at that time?
“A He was.”
Mrs. Hilton said that after the adoption she had mentioned that fact to her husband’s mother and father and to Joe Leslie, and to others. She said she could not remember exactly the wording of the document prepared by Mr. Phillips, but that she had glanced oyer it and believed it was “an adoption.” The trial judge was impressed with the sincerity of Mrs. Hilton’s testimony. A certificate of baptism from the records of the Holy Trinity Church, Shreveport, Louisiana, certifies that Raymond Burl Hilton, adopted child of Burl Oliver Hilton and Myrtle Mae Howard, was baptized on the 20th day of April, 1924. Monsignor John C. Vandegaer, pastor of the church, testified that it was a practice of the pastor to record information conveyed to him by the parents and when informed a child was adopted this information would be shown on the baptismal records. Mrs. Rosalie Módica Sardisco, godmother of the child, testified that she was present at the baptismal and that she and her husband had been informed that the baby had been adopted by the Hiltons. Joe R. Leslie likewise testified that Mrs. Hilton had informed him that they had adopted the child, Raymond Burl Hilton. The record discloses no testimony indicating the adopting parents ever had informed anyone Raymond Burl Hilton was not an adopted child. This cumulation of evidence strongly supports a finding that there was in fact an act of adoption. Adoptions authorized under Act 31 of 1872 as a rule were not recorded because of the desire of many parents to prevent the adopted child from finding out that he was not a natural child of his adopting parents.
Counsel, however, have argued the evidence fails to establish whether the document in question was an act of adoption as prescribed by law or merely a consent to adoption. Although Act 46 of 1932 does perform a curative and validating effect with respect to adoption proceedings had under Acts 31 of 1872 and Act 48 of 1924, it is essential, we think, to prove the intention of the requisite parties to effectuate an adoption. If, therefore, the evidence would prove only the written consent of the natural mother to permit adoption, such an act of itself would not be sufficient to sustain an adoption even with the aid of Act 46 of 1932.
The evidence as to the nature of the contents of the document prepared by Mr. Phillips comes only from the testimony of Mrs. Hilton and Mrs. Phillips. When this cause was remanded for the purpose of ascertaining the existence of the document in the files of Mr. Phillips, the widow of Mr. Phillips testified that she was her husband’s filing clerk from 1932 until he quit practicing law and that she had charge of his files after their removal to their residence. She testified she had destroyed the paper in question. It had, she said, been kept in a brown folder marked “adoptions” and Mr. Phillips had used it as a guide for other adoptions. On cross-examination she first testified the instrument was a notarial act wherein the unwed mother had consented for the adoption to Mr. and Mrs. Hilton. Another time the witness stated the paper was an affidavit wherein the *370 natural mother consented to the adoption and signed it as did Mr. Phillips and did not recall seeing any other signatures. The trial court, in his reasons for judgment, thought Mrs. Phillips in error as to the form of the instrument. His conclusion is understandable. Many years had elapsed after Mrs. Phillips had had occasion to'see the document and we may observe that whether a document is a notarial act or simply an affidavit requires technical knowledge. The consent of the mother to an adoption must be one of the declarations in a complete act of adoption as it would also he a necessary part of an act evidencing her consent for the adoption of her child. If the testimony of Mrs. Hilton is creditable, as so stated by the trial court, it properly follows that the instrument executed at the Charity Hospital was in fact an act of adoption.
We have concluded, as did the trial court, that there was in fact an act of adoption executed bearing the signatures of the unwed mother, the adopting parents, a notary public and two subscribing witnesses and as a consequence of this Raymond Burl Hilton is the legally adopted child of Burl Oliver Hilton and Myrtle Mae Howard Hilton.
The attorney for absent heirs having appealed from the decision of the trial court requests that this court award him the sum of $70.00 as necessary expenses incurred in perfecting the appeal. We find this expense to be a proper charge against the succession in addition to the sum of $175.00 as previously adjudged by the trial court. Accordingly the judgment will be amended to allow reimbursement of the attorney for absent heirs of $245.00 to be paid out of succession funds.
The judgment is amended by allowing the attorney for absent heirs the additional sum of $70.00 to be paid from succession funds, and as so amended, is affirmed at the cost of appellants’ other than the attorney for absent heirs.