DOMENGEAUX, Judge.
This is an action by Inez Davis Kapellas opposing the probate of the last will and testament of Clemence Gussman. The appellant contends she is the adopted daughter and sole surviving heir of Clemence and Joseph Gussman and that provisions in the last will and testament of her mother amount to disinherison. The attorneys for the estate and its administrator filed an exception of no right or cause of action alleging that Inez Kapellas had no interest or heirship in the decedent’s estate, i.e., that Inez Davis Kapellas was not the adopted child of Clemence and Joseph Gussman. Both the opposition to probate and exception were consolidated for trial. Judgment was rendered dismissing the opposition to probate and sustaining the exception of no right or cause of action. Inez Kapellas perfected this appeal.
Inez Davis Kapellas was born of the marriage between Alvin and Onie Davis *666 on March 20, 1921, in Shreveport, Louisiana. During Inez’s early childhood her father abandoned his wife and' the two small children. Subsequently her mother became seriously ill so they moved to Halpin, Louisiana, to live with her uncle, C. E. James, who was the brother of Inez’s mother. At some time during the year 1925, when Inez was approximately four years old, Mr. and Mrs. Joseph Paul Gussman, who lived in Shreveport, learned of the plight of the Davis family, came to visit them, and offered help. What transpired on this and allegedly a subsequent visit is not clear from the record. Only Mr. C. E. James, who was 69 years of age at the time of trial, testified as to the circumstances surrounding the 1925 visits. His testimony was to the effect that he remembered Mr, Gussman coming to his home to discuss taking Inez and placing her in school. He later returned with his wife and someone who Mr. James thought to be a lawyer, and they allegedly discussed adopting Inez. Papers of some sort were then filled out and signed by Inez’s mother and Mr. and Mrs. James. He testified however that he did not read the documents but stated it was his understanding that they were supposed to have been adoption papers. After the papers were allegedly signed, the child, Inez, was taken away and he did not see her again for several years. In addition, he had no idea as to what might have happened to the papers but did recall that all of his sister’s papers were destroyed in 1932 when his house in Austin, Texas, burned.
In 1925, shortly after Inez left the James’ home, Mr. Gussman died and Mrs. Gussman and Inez moved to Rayne, Louisiana, to live. The record, although indefinite as to time or duration, indicates that during the ensuing years Inez was placed in St. Mary’s Orphanage at Lafayette and later boarded awhile with Mrs. Rosa Falcon, a sister of Mrs. Gussman. At about age 13 she moved to Houston, Texas, where Mrs. Gussman was employed as a housekeeper. It was Inez’s testimony that while in Houston she often went to visit her Uncle and Aunt James in Austin. On one such visit Inez testified as she was about to return to Houston, Mrs. Gussman telephoned her saying she was no longer wanted and not to come back to Houston.
Thereafter Inez lived with the James family until she joined the WACS. While in Austin she attended school under the name of Davis. Inez testified she did not see Mrs. Gussman again until she was 19 and again in 1955, but corresponded with her often. She further testified it was always her feeling that she had been adopted although she never saw an act of adoption, only hearing Mrs. Gussman talk of it.
Mrs. Gussman’s last years were spent in Crowley, Louisiana, where she lived at a nursing home after having a stroke. She died testate on June 2, 1966, naming Inez Davis Kapellas as a legatee. In her will she referred to Inez as her foster daughter, leaving her a Singer sewing machine and Hamilton wrist watch. The rest of her property and possessions were left to her brothers and sisters and their children. This suit followed.
At trial attorneys for the estate and administrator objected as hearsay to the testimony of C. E. James concerning what the parties said at the alleged meeting and signing of papers in 1925. In addition they objected to any parol evidence to establish the heirship or to contradict the will.
The first objection was sustained and Inez’s attorney was permitted to include the hearsay evidence in the record under a proffer of proof. On this appeal the appellant contends that under Succession of Hilton, 175 So.2d 366 (La.App. 2nd Cir. 1965), secondary or parol evidence can be offered to establish an adoption, as to the execution and contents thereof, where the document is lost or destroyed. Therefore it is alleged that the trial judge was in error in excluding the testimony of Mr. James as to the conversations attending the execution of the alleged document, since those conversations bespoke the intention of the parties as compe *667 tently as would have the alleged document itself.
Appellee’s second objection was in effect overruled on the basis of the Succession of Hilton case, when the trial court allowed parol to show the making or existence of the purported notarial act evidencing adoption and its subsequent destruction or becoming lost.
At the outset it was stipulated that diligent efforts had been made to locate an act of adoption and none was found. Counsel for appellant introduced into evidence letters from the Clerk of Court in Webster Parish and the Louisiana Department of Public Welfare stating that records in the Department of Welfare had not begun until 1936 and that there was no record of Inez’s adoption in the Webster Parish Court.
Only Mr. James testified as to the alleged 1925 meetings and it was stipulated that his wife if she were called as a witness would testify substantially the same as her husband. Regarding Mr. James’ testimony, the trial court observed:
“I can not help but observe that Mr. James is relying upon a memory of 50 years past which in the normal course of things must have been dimmed somewhat by time. Even if it were not, he could not definitely say that it was an act of adoption. He did not read the instrument, never saw it after that date, and signed it merely as a witness along with his wife.”
However, the appellant alleges that the testimony of Mr. James does not stand alone and that other evidence presented in the case also clearly points to the conclusion that an adoption was intended.
An extract from the baptismal records of St. Joseph’s Catholic Church of Rayne shows that Inez was baptized as the “adopted” daughter of the Gussmans on July 2, 1925. However, as noted by the trial judge and evidenced on the face of the extract, the words “child of” are deleted and the self-serving “adopted by” is inserted in lieu thereof. On the extract is also a notation to the effect that “adopted by” was not shown as .such on the original —the actual designation being “child of”.
What is alleged to be a photocopy of an extract of the same baptismal certificate is also introduced into evidence. This certificate indicates the appellant was baptized as the “child of” the Gussmans on July 2, 1921. No explanation other than a possible clerical error is given for this latter conflict in dates.
Further evidence allegedly demonstrating the relationship is a letter introduced into evidence dated May 27, 1960, from Mrs. Gussman to Inez which ends with the sentence, “I am with love, your mother”. However, we note the letter is signed “Mrs. C. Gussman”.
Appellant further alleges that the reference in Mrs. Gussman’s will to Inez as her “foster daughter” was made because of prior friction and bitterness between the two. The will was written in 1956.
Mr. Nelson Hulin, a brother of Mrs. Gussman, testified earlier at trial on the opposition to his appointment as administrator of the succession. He stated, as far as he knew, the Gussmans were in the process of legally adopting Inez when Mr. Gussman died in 1925, and that after the latter’s death everything was just dropped. It was stipulated at the trial herein that if Mr. Hulin was called to the stand he would testify that it was his impression as well as the impression of the other members of the Hulin family that Inez was never legally adopted and was only the foster child of the Gussmans.
The trial judge, in ruling against the appellant concluded that there was insufficient proof in this suit of an adoption in fact or that an instrument of adoption never existed. Consequently he sustained the exception of no fight or cause of ac *668 tion and dismissed the opposition to the probate. After a thorough review of all of the facts and evidence elicited at trial we find no manifest error in his conclusion.
However, the learned trial judge, in his reasons for judgment, found the rule in the Hilton case as to proof of a lost or destroyed instrument to be inapplicable to the facts of the instant case because there was “insufficient proof that an instrument of adoption ever existed”. Yet, as aforementioned, at trial the judge allowed parole evidence to be introduced by appellant’s attorney to prove the existence of the act purported to evidence an adoption- and its subsequent destruction or becoming lost.
We are of the opinion that the principles enunciated in Succession of Hilton do in fact apply to our case and therefore we deem it necessary to clarify what we consider an inconsistency in its application herein.
Hilton dealt with the question of whether or not a legal adoption took place in 1923. The early procedure for adoption was different from the present day agency form under the supervision and control of the courts. Under Act 31 of 1872 and Act 48 of 1924, a notarial act was the only form required for the legal adoption of minors. It was not until Act 13 of 1928 that recordation of the act in the office of the Registrar of Conveyances was first required. In the following decade the notarial act as evidence of consent was dispensed with and judicial petition presented by the adoptive parents was substituted. It was only in 1942 that the present day agency form of adoption was created. Comments, 1 La.L.Rev. 197-8 (1938); Notes, 22 Tul.L.Rev. SI3-4 (1948).
We feel the first principle enunciated in Hilton is that secondary or parol evidence is admissible to establish the existence or making of the instrument purported to be an adoption. This is a question of fact and may be proved by direct, circumstantial, or even parol evidence. See 32A C.J.S. Evidence § 836 (1964); Peterman v. Vermont Savings Bank, 181 La. 403, 159 So. 598 (1935). This is what was done in Hilton and also in the instant case. The appellant herein offered parol evidence, the testimony of Mr. James, as to the existence of the papers which the witness thought amounted to an adoption. The trial judge correctly allowed this evidence to be presented. He also allowed into evidence, under the same theory, the testimony regarding the loss or destruction of the instrument purporting to be an adoption. The diligent but fruitless attempts to find the instrument were testified to by both Inez and her attorney. In addition Mr. James testified he thought Inez’s mother had kept a copy but it was probably destroyed with the rest of her records in the Austin, Texas, fire.
Hilton also stands for the proposition that once the fact of an instrument alleging to be an adoption is established, as well as its subsequent loss or destruction, parol evidence can then be introduced to show the contents thereof. See also Lyons v. Goodman, 78 So.2d 424 (La.App. 1st Cir. 1955).
We do not view Hilton as holding that before any parol evidence can be introduced to show that the instrument has been lost or destroyed, the fact that an act of adoption existed must first be shown. In fact Lyons, as well as other jurisprudence, dictates before an act of adoption [i. e.— contents of act purporting to be an adoption] can be shown by parol it is necessary to first show by a preponderance of the evidence that an instrument purporting to be the act of adoption existed and that it was destroyed or lost. See also Magnolia Petroleum Co. v. Boudreaux, 233 La. 409, 96 So.2d 650 (1957) and cases cited therein. However, we feel the trial judge herein in effect correctly allowed parol evidence to prove the contents of the act purporting to be an adoption, although he subsequently stated the rule did not apply.
*669 However, it is well recognized that parol proof of the contents of a lost or destroyed instrument must be established by the testimony of one having first-hand knowledge of the subject matter therein, and not by hearsay based upon third parties’ statements. 32A C.J.S. Evidence § 835. The trial judge herein prevented the appellant from introducing hearsay testimony of what the parties said at the 1925 meetings. This was imminently correct, inasmuch as counsel for appellant did not allege and prove that the evidence should have been allowed under an exception to the hearsay rule.
Thus the burden was on the appellant to prove by a preponderance of the evidence that the contents of these papers showed in fact an act of adoption. This the trial court found the appellant failed to do and we affirm.
In Hilton the burden of proof was clearly met. Therein, Mrs. Hilton testified she instructed an attorney to prepare papers so she and her husband could legally adopt a child. Testimony was to the effect that this was done and both she, Mr. Hilton, and the attorney-notary public then signed the document in triplicate originals. Mrs. Hilton read the document and believed it was an adoption. Other witnesses testified they had been informed by the Hiltons that the child had been adopted. The wife of the attorney who prepared the documents also testified that the copy retained by her husband had been destroyed by her. Both the trial and appellate courts found this cu-mulation of evidence to strongly support their finding of an actual act of adoption.
In Lyons v. Goodman, supra, under a similar situation, an abundance of evidence was also introduced to prove that an act of adoption had been perfected. One of the adoptive parents testified she did not know word for word what the papers provided, but that their effect was that the couple had legally adopted a child. The grandmother of the child testified she had read the document signed by her daughter, the child’s natural mother, and had herself kept the document for a number of years. She explicitly stated the document was adoption papers. One of the witnesses testified the papers she signed were for the adoption of the child. In addition the child’s natural mother testified that she knew that the purpose of the papers was for the adoption of her child. Also testifying was the secretary for the attorney-notary public who prepared the act to the effect that she performed stenographic service in connection with the act, executed it as one of the witnesses, and that she particularly remembered the completion of the adoption since it was the only one prepared while she was employed by the attorney. As to the destruction or loss of the act, a former partner of the attorney testified that his partner’s legal files had all been destroyed. Thus, on the above evidence, the Court concluded that there was sufficient proof to establish an act of adoption.
Such cumulation of evidence is not present herein. Neither Mr. James nor any of the other witnesses could testify from first hand knowledge as to the substance of the contents of the papers signed. In fact, Mr. James did not even read the instrument signed, nor was it read to the parties present. We therefore feel, as did the trial judge, that the appellant did not prove by a preponderance of the evidence that an act of adoption ever existed. We cannot decree that such an act existed on mere speculation.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.