847 So.2d 185 (2003)
SUCCESSION OF Ronald R. PLUMMER.
No. 37,243-CA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2003.
John J. Mooney, Jr., Felix J. Bruyninckx, III, Monroe, for Appellants, Carl Plummer, Sherryl Plummer, Donald Plummer, Doris Plummer.
Mary Alice Bryant, Monroe, for Appellees, Cynthia M. Thomas, Cheronda Thomas Minor.
Before BROWN, PEATROSS and KOSTELKA (Pro Tempore), JJ.
KOSTELKA, Judge Pro Tempore.
In this disputed succession case, the brothers and sisters of the decedent, Ronald R. Plummer, appeal the judgment of the trial court holding that the document presented for probate is not a valid olographic will. We affirm.

FACTS
In 1999, Ronald R. Plummer ("Mr. Plummer") attempted to create an inter vivos trust for the management and distribution of his assets using a printed form with the caption "Revocable One-Party Living Trust" (hereinafter "Exhibit J-1"). In one section of the trust instrument entitled "Schedule of Beneficiaries and Distributive Shares," handwritten instructions designate the beneficiaries and direct the management and division of the trust property upon his death. Mr. Plummer *186 was divorced with no children from the marriage. He named his brothers and sisters, Carl Plummer, Donald Plummer, Sheryl Plummer and Doris Plummer ("the appellants"), all of whom live in Adams County, Mississippi, as beneficiaries to the trust. The document is dated June 25, 1999 and signed "Ronald R. Plummer." Mr. Plummer died on April 9, 2000 without having completed the inter vivos trust.
Besides his brothers and sisters, Mr. Plummer was survived by his ten-year-old daughter, Cheronda Leshay Thomas. On September 4, 2001, Cheronda's mother, Cynthia Thomas ("Thomas"), filed a petition on behalf of her daughter to open the succession of Mr. Plummer and to have Mr. Plummer's succession declared intestate. In response, the appellants filed a "Petition to Probate Olographic Testament" on January 28, 2002 alleging that Mr. Plummer had a Last Will and Testament. The alleged will consisted of two unusually numbered pages, K105-3 and K105-3-1, annexed to the petition. The "will" was, in fact, the "Schedule of Beneficiaries and Distributive Shares" (hereinafter "Exhibit A") from the inter vivos trust instrument.
After an evidentiary hearing and argument on May 10, 2002 and a second oral argument on August 1, 2002, the court issued its Ruling on September 4, 2002, holding that the document was not a valid olographic will. The court specifically found that the testamentary intent of the document was not "unmistakable," and that the signature to the document had not been proven authentic.
The appellants filed a suspensive appeal. Prior to lodging the record, the court reporter notified the clerk of the trial court that an "accurate and efficient" transcript of the May 10, 2002 testimony could not be obtained from the tapes due to a malfunction in the recording equipment at the time of recordation. The trial court issued an order on November 20, 2002 to each counsel of record to submit a summary of the testimony of each witness no later than December 15, 2002. The court further ordered the parties to submit these summaries to the court's chambers and not to file them into the record absent an order from the court. Subsequently, on December 13, 2002, the Summary of Testimony submitted to the court by the appellants was filed in the record. This document contains a summary of the testimony of all the witnesses who testified at the May 10, 2002 hearing.[1]

DISCUSSION
The appellants argue that the trial court erred when it concluded that Exhibit A did not constitute a valid olographic will and that Mr. Plummer therefore died intestate. Specifically, they contend the trial court erred in its findings that Exhibit A did not set forth testamentary intent and that the burden of proof had not been met with respect to proving Mr. Plummer's signature.
Appellants initially maintain that reversal is required because this Court is unable to conduct a proper review of the testimonial record, inasmuch as a complete transcript of the testimony is unavailable. They further contend that the missing testimony establishes testamentary intent.
When notified of the court reporter's inability to provide a transcript of the testimony, the trial court ordered the parties to summarize the testimony of all trial witnesses for both sides. The record contains *187 the appellants' summarized version of the testimony, and the appellants filed no motion to remand the case for the purpose of retaking testimony. Cf. Kay v. Home Indemnity Company, 301 So.2d 705 (La. App. 3rd Cir.1974).
La. C.C.P. art. 2161 states that an appeal shall not be dismissed because the trial record is missing or incomplete no matter who is responsible. The court may remand the case for retrial or correction of the record. Id. However, a record on appeal that is incomplete may be corrected even after the record is transmitted to the appellate court by the stipulation of the parties or by the trial or appellate court. La. C.C.P. art. 2132. If the testimony of the witnesses has not been transcribed, the appellant must request the other parties to join with him in a written and signed narrative of the facts, and if an agreement cannot be reached regarding the narrative, the judge shall make a written narrative of the facts, which shall be conclusive. La. C.C.P. art. 2131.
The trial judge in this instance did not follow the procedure set out in La. C.C.P. art. 2131. The judge should have required the parties to stipulate to a narrative of the facts of the case, and, if an agreement as to those facts could not be reached, the trial judge, as the fact-finder, should have set forth a narrative of the facts. In this instance, the trial court requested both parties to provide a "summary of the testimony" of this case. The appellants provided a narrative of the trial testimony that was filed in the record. Thomas submitted with her brief a narrative of the trial testimony.
Despite this error, we do not consider remand necessary in this instance. An appellate court has the discretion to defer the question as to whether the necessary documents are in the record, to be decided on the merits, and then dismiss the appeal, if the record is insufficient. Succession of Wintz, 111 La. 40, 35 So. 377 (La.1902).
The trial court's conclusion that testamentary intent was lacking in Exhibit A was not based upon testimony of the witnesses, but on the language of the document itself. It is well settled that parol evidence cannot be used to establish testamentary intent. Succession of Faggard, 152 So.2d 627 (La.App. 2d Cir.1963).
Thus, under these circumstances, we conclude that no prejudice resulted from the loss of the recorded testimony for purposes of establishing testamentary intent. Although the trial court did not follow exactly the procedure for creating a narrative of the facts as specified by La. C.C.P. art. 2131, we conclude that the record is sufficient to determine the dispositive issues in this case, namely, the validity of the olographic will.[2]Creech v. Creech, 29,499 (La.App.2d Cir.05/07/97), 694 So.2d 589; Simmons v. Yelverton, 513 So.2d 504 (La.App. 2d Cir.1987).
There are two essential requirements for a valid will: the act must be in valid form and the clauses it contains, or the manner in which it is made must clearly establish that it is a disposition of last will. Hendry v. Succession of Helms, 557 So.2d 427 (La.App. 3d Cir.02/07/90), writ denied, 560 So.2d 8 (La.1990).

*188 Formal Requisites of an Olographic Testament

An olographic testament is that which is entirely written, dated, and signed by the testator. The olographic testament is subject to no other form. La. C.C. art. 1575. The olographic testament must be proved by two credible witnesses testifying that the handwriting on the instrument is that of the testator. La. C.C.P. art. 2883. Succession of Calhoun, 28,233 (La.App.2d Cir.04/03/96), 674 So.2d 989. The jurisprudence interpreting La. C.C.P. art. 2883 has held that the phrase "credible witness" includes individuals who are familiar with the testator's handwriting, as well as handwriting experts. In re Succession of Jones, 356 So.2d 80, 82 (La.App. 1st Cir. 1978), writ denied, 357 So.2d 1168 (La. 1978). Thus, proof that an alleged olographic will was entirely written, dated and signed in the testator's handwriting is not limited to handwriting experts. A credible individual familiar with decedent's handwriting is competent to serve as a credible witness pursuant to La. C.C.P. art. 2833. Succession of Lirette, 5 So.2d 197 (La.App. 1st Cir.1941).
The courts, over the years, have lessened the formalities of olographic wills, i.e., using slash dates instead of writing out the date, Succession of Boyd, 306 So.2d 687 (La.1975); writing the will in part pencil, part ink, Succession of Smart, 214 La. 63, 36 So.2d 639 (1948); and, in Oroszy v. Burkard, 158 So.2d 405 (La.App. 3d Cir.1963), the court held that an olographic will does not, in its entirety, have to all be written on the same date. Nevertheless, the basic formal requisites have remained in place, i.e., a valid olographic testament must be written, dated and signed in the handwriting of the testator.
In this case, the trial court concluded that Exhibit A does not survive as an olographic will because the "testamentary intent is not unmistakable," citing Succession of Burke, 365 So.2d 858 (La.App. 4th Cir.1978). In Burke, supra, the court held that the trial court did not err in finding a valid will, where the testamentary intent was unmistakable in the words that the decedent wrote using a printed will form in which he filled in the blanks in his own handwriting, and the essential formalities of an olographic will were present.
Appellants argue that Succession of Burke, supra[3] requires the court to disregard the printed form words in the document in construing the will. If the printed language is ignored, appellants argue, the type of printed form document used has no significance for purposes of testamentary intent, and hence the case sub judice is not distinguishable from Succession of Burke. Therefore, if there is testamentary intent present in confecting the document and such intent is demonstrated by the language written by the testator, they argue the document survives as a will.
While it is true that some cases have disregarded printed matter on a document submitted for probate as an olographic will and have upheld its validity, we conclude that the facts of those cases, which we briefly summarize below, are distinguishable from the instant case.
In Succession of Roth, 31 La. Ann. 315, 1879 WL 7097 (La.1879), the valid olographic will was written on a blank page of an account book.
In Jones v. Kyle, 168 La. 728, 123 So. 306 (La.1929), the will was made on one of the letterheads of the testator used in his mercantile business. At the top was printed "J. W. Jones, General Merchandise." *189 Below this was printed a date line "Dunn, La., ______ 191 ___." Although the testator filled in the blanks on the date, he wrote in the entire date elsewhere in the document in his own handwriting.
In Succession of Heinemann, 172 La. 1057, 136 So. 51(La.1931), the will was written on the letterhead of the New Orleans Baseball & Amusement Company, and the place where it was written, namely, "New Orleans, La.," was in print, but all of the rest of it was indisputably in the handwriting of the testator. The court upheld the olographic will.
In In re Succession of Jones, supra, the original olographic will bore the date "Nov. 15, 1972." The testator's lawyer made a copy of the will, but only part of the date appeared on the copy. The attorney who held the copy, added the date "Nov. 15, 1972" at the same place where the date appeared on the original in his own handwriting. Nevertheless, the court upheld the validity of the copy for probate when the original was destroyed since the date on the original in the hand of the testator was proven.
By way of contrast, some cases have reached a different result when printed matter not in the handwriting of the testator was present in the document.
In Succession of Robertson, 21 So. 586 (La.1897), the court held that an olographic will was invalid where it was written on a printed heading, with the figures "189," of the year in print. The testator supplied only the last digit to the date, which, when the printed matter is ignored, rendered the date nonexistent. Interestingly, the court noted that the printed words "New Orleans" on the letterhead gave rise to no issue in the case because the place where an olographic will is written is of no importance. The will was invalid because the date was not written by the testator.
In Succession of Angele, 546 So.2d 262 (La.App. 1st Cir.1989), writ denied, 550 So.2d 656 (La.1989), the court declared that a will typewritten and signed by the testator was not valid, rejecting the argument that the term "written" was broad enough to include "typewritten" wills.
In In re Succession of Aycock, 02-0701 (La.05/24/02), 819 So.2d 290 (La.2002), the supreme court reversed a Third Circuit ruling that upheld an olographic will written entirely in the hand of the testator, except it was dated by a notary. Finding that the will was invalid as to form, the court stated that the testament must be written, signed and dated in the handwriting of the testator.
It is clear from these cases that the presence of extraneous printed material such as a personal or business letterhead will not defeat the formal requisites of an olographic will provided that the testament itself is entirely written, dated and signed in the handwriting of the testator. Thus, our courts have ignored those printed words whose presence on the document is incidental. An exception has evolved with respect to partially printed dates. In those cases that have upheld the will in spite of the fact that a portion of the date was printed, the rule is that the handwritten portion of the date must be sufficient to be certain of the date when the printed numbers are ignored. Succession of Heinemann, supra. In other words, the ignored numerals are not essential to a determination of the date.[4]
In this instance, however, the complete inter vivos trust instrument filled out by Mr. Plummer consists of several pages of printed words that are an essential *190 part of the trust instrument. Exhibit A, the Schedule of Beneficiaries and Distributive Shares, consisting of pages K105-3 and K105-3-1, is inseparable from Exhibit J-1, consisting of pages K105-1A thorough D and K105-2, and all pages are essential to the confection of the trust document. Exhibit A was no doubt intended by Mr. Plummer to be part of the overall trust document. Unlike the cases using mere stationery or letterhead upon which a testament was written, we cannot ignore the printed words on the trust document because they are inextricably tied to and form an integral part of the entire document, thus negating the formal requirement that the will be entirely written in the hand of the testator. We, therefore, hold that the trial court correctly concluded that the document did not constitute a valid olographic will.
We distinguish the facts of the instant case from Succession of Burke, supra. The testator in that case clearly intended to create a will, albeit another type of will, using a statutory will form. In this instance, the testator was attempting to set up an inter vivos trust.
Those cases in our jurisprudence, with the possible exception of Succession of Burke, where a court has ignored words printed on a document in reaching the conclusion that the requirements of a valid olographic will have been met involved printed words not intended to be a part of the testament.

Testamentary Intent
The trial court recognized that Exhibit A was actually a part of the main document entitled a "Revocable One-Party Living Trust," Exhibit J-1. This is plainly evidenced by the page numbering style connecting the two documents. The trial court concluded that when Exhibit A is taken into account with Exhibit J-1 and Succession of Burke, supra, it cannot be said that the testamentary intent is unmistakable. We interpret the court to mean that when the trust instrument is considered as a whole, testamentary intent is lacking. The trial court distinguished the facts of Succession of Burke, supra, in which the decedent used a printed statutory will form instead of a "Revocable One-Party Living Trust" form as used in the case sub judice. The trial court concluded that the nature of the printed form casts doubt as to the testamentary intent of the document. We agree.
In Succession of Patterson, 188 La. 635, 177 So. 692, 694 (1937), our supreme court quoted approvingly from 28 Ruling Case Law, § 3, p. 59 as follows:
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament. Article 1712. But ... Furthermore, the animus testandi must exist when the instrument is executed or acknowledged, and the intent must apply to the particular instrument produced as a will. A paper is not established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will.... (Emphasis ours)
Here, the document submitted for probate contains no actual bequests. Virtually all expressions or words by Mr. Plummer regarding the disposition of his property involve directions for the management of the trust property by his brothers and sisters. He names them as the beneficiaries and to act on his behalf after he has died. He directs them to sell the home, but does not bequeath them the *191 proceeds of the sale. He directs them to divide the contents of the home among themselves, to use the $10,000 life insurance policy for his funeral, and if the costs exceed the policy, then to use money from his checking/savings account. He directs them to take the remainder of the money and put it in a savings account along with the money from the sale of the home. He directs them to roll over the interest into the account. He grants the beneficiaries the power to manage his debts and whatever other finances he leaves upon his death. He then grants them "full usage of the money" in the account "to solve what problems they encounter." Even with regard to his truck, he instructs his brothers and sisters to decide who will receive it. Finally, Mr. Plummer states that his daughter, Cheronda, will receive his retirement pension from the City of Monroe. It is not clear if this is a bequest.
Even if we were to conclude that the document is in valid form, being entirely written, dated and signed by the decedent, the document fails as a valid will because it lacks the necessary animus testandi. Despite the fact that the document contains expressions which reflect Mr. Plummer's intention to direct the division of his property upon his death, there are few words, if any, signifying bequests. Accordingly, we conclude that the trial court was correct in concluding that the document did not evidence testamentary intent.

Signature of the Testator
The trial court concluded that the legal proof required to authenticate Mr. Plummer's signature had not been met. Because we have determined that the document presented for probate fails as an olographic testament both in form and substance, it is unnecessary to decide this issue.

CONCLUSION
Accordingly, the trial court did not err in concluding that the document presented for probate did not constitute a valid olographic will. The judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] Thomas included a summarized version of the testimony of the May 10, 2002 hearing and an unstamped copy of a letter to the trial judge with her brief. Because the brief and attachments were untimely filed, neither will be considered by this Court.
[2] For reasons not stated in this record, the inter vivos trust was not established by Mr. Plummer. The other permissible form of trust in Louisiana, the testamentary trust, may be created only in one of the forms prescribed by the laws regulating donations mortis causa. La. R.S. 9:1751. Thus, the pivotal question in this case is whether Exhibit A meets the requirements of a donation mortis causaa will.
[3] Succession of Burke has not been cited as authority by this or any other appellate court in this state. The case is mentioned in the reporter's comments to La. C.C. art. 1575.
[4] Extrinsic evidence has been allowed to make certain an ambiguous date, but not to establish a nonexistent date. See, In re Succession of Aycock, supra.