CARAWAY, J.
|,In this succession proceeding, the trial court ordered the probate of the decedent’s 2006 notarial testament and the probate of a 2012 letter written by the decedent to the appellee, and determined by the court to serve as a codicil. The appel-lee is the daughter of a predeceased legatee named in the 2006 testament. The legatee was also purportedly adopted by the testator. The appellant asserts that *1206 the 2012 letter is not a valid olographic testament or codicil and was erroneously probated. Furthermore, the appellant asserts that the appellee failed to prove that the predeceased legatee was adopted by the testator, so that any claim by appellee to the lapsed legacy under Civil Code Article 1593 is unfounded. Finding that the 2012 letter was not a valid codicil and that the appellee failed to establish that the legatee had been adopted by the testator, we reverse the trial court’s judgment and remand for further proceedings.

Facts and Background

In 1981, Willie James Lain and Rosie Mae Lain each executed separate statutory wills in which each left his or her entire estate to the other. Willie Lain and Rosie Lain were husband and wife. In 2006, Rosie Lain died, but her will was not probated at that time. Following Rosie Lain’s death, Willie Lain obtained the services of a notary to help prepare and execute a notarial will. The will makes only one bequest. The will states, “I revoke all wills that I have previously made.... I leave my entire estate to be shared equally among my natural and adopted children who are Mary Lee Lain .. .• and John Simon.” This will was executed before a notary Land two witnesses, who signed an attestation clause, on July 26, 2006. Willie Lane died on June 7, 2012, but his legatee, John Simon, had previously died on July 16, 2011. That lapsed legacy is the focus of this controversy.
The family history of the parties is helpful to fully understand the underlying issues in this case. Willie and Rosie Lain were married on December 27, 1947. They never had any children of their own born during their marriage or prior to their marriage. Around 1958, Rosie’s mother, Ethel Levi, was on her deathbed and requested that Rosie, as her oldest child, raise Ethel’s youngest child, John Simon. Thus, John Simon is the natural brother of Rosie Lain. John Simon was still a child at that time, and sometime in the 1950s, Willie and Rosie Lain purportedly adopted John Simon.
The appellant in this dispute is Mary Lee Lain (“Mary”), the daughter of Willie Lain’s brother, Martel Lain, Sr. Thus, she is Willie Lain’s niece. However, appellant had a close relationship with Willie Lain growing up, and Willie Lain often referred to her as his “daughter.” Mary admits that she was never adopted by Willie Lain, contrary to the statement in his will.
The appellee, Nelda Lawrence (“Nelda”), was born in 1968 to Shirley Doyle, who was married at the time to Roosevelt Freeman. Thus, Nelda is the presumed child of Roosevelt Freeman. No evidence is in the record of any contestation or disavowal of paternity. Nevertheless, John Simon had a sexual relationship with Doyle around the time of Nelda’s birth. Allegedly from this relationship, Nelda was conceived. When Nelda was in high Lschool, she says she regularly visited with Willie Lain and Rosie Lain. Nelda is now a practicing attorney in Florida. When Rosie Lain died in 2006, Nelda attended the funeral with John Simon.
Willie Lain kept all his important documents, including both his 1981 and 2006 wills, as well as Rosie Lain’s 1981 will, in a safe-deposit box in Winnsboro State Bank. After Rosie Lain died, Willie Lain accessed the box on February 5, 2007. John Simon’s name was also on the box. After John Simon’s death, the ownership of the safe-deposit box was placed in the name of W.J. Lain or Mary Lee Lain or Nelda Lawrence on August 4, 2011. Records show that only Willie Lain had ever entered the safe-deposit box until October 17, 2011, at which time Willie Lain and Nelda did so. Willie Lain entered the box two more times before he died. Mary entered the box only twice, including the day after *1207 Willie Lain died, and on October 2, 2012, when she closed it.
After Willie Lain’s death on June 7, 2012, Mary immediately traveled to Louisiana, entered the safe-deposit box, and obtained the will because she claimed that Willie Lain had instructed her before his death to access the safe-deposit box as quickly as possible after he died.
Following the death of Willie Lain, Mary filed a pleading on July 27, 2012, styled, “Petition to File Dual Statutory Wills and for Possession.” In the petition, Mary prayed for the wills of Rosie and Willie Lain to be probated. She also prayed that she be put in possession of the entire estate of Willie Lain. The petition also raised the issue of whether the deceased legatee, John Simon, was survived by a daughter, Nelda. The petition | requested that Nelda be served with the pleadings and be required to show cause why Mary should not be named as the only “surviving heir” of Willie Lain.
At the time of these Louisiana succession proceedings, Nelda had been in the process of dealing with John Simon’s estate in Texas. She filed the petition on December 19, 2012. After hearing testimony, the court rendered judgment, which was filed on February 15, 2013. The Texas judgment for the estate proceedings was titled, “Judgment Declaring Heirship and Order of No Administration.” Mary was sent notice of the Texas proceedings to an address listed for Willie Lain. The address, however, was erroneous, so Mary never received notice. Notice was also made pursuant to Texas statutes for notice by publication. Pertinently, the Texas judgment states that the court found “[tjhat Roosevelt Freeman is not the father of Nelda Lawrence; and that Nelda Lawrence is the daughter and heir of John Simon.”
After an order naming Mary the succession representative for Willie Lain’s succession, Nelda finally made her first appearance in the proceedings on September 27, 2013, when she filed a petition to annul the 2006 testament. She also requested the court to determine whether Mary or John Simon was adopted by Willie Lain. Nelda alleged that she had obtained the Texas judgment and asked the court to give that judgment full faith and credit concerning her recognized filiation with John Simon. She asserted that Willie Lain’s 2006 testament was null because Willie Lain did not execute it before two witnesses. Nelda claimed that the notary |fiapproached the two witnesses at their place of business, where they signed the will while Willie Lain sat in a parked car waiting. She contended that Mary surreptitiously removed a judgment of adoption of John Simon from the safe-deposit box. In summary, Nelda made claims for the court to annul the 2006 will, determine that John Simon was lawfully adopted, determine that Mary was not adopted, grant the Texas judgment preclusive effect regarding the issue of her filiation to John Simon, and order that she be named the “sole forced heir” of Willie Lain.
A hearing on this dispute was set for October 7, 2012. However, on the Friday before this hearing, Willie Lain’s brother, Arthur Lain, had a petition for possession filed on the day the hearing began. Arthur Lain alleged that the 2006 will was null and that he was Willie Lain’s heir because Willie Lain had no children, adopted or otherwise. Arthur Lain’s attorney, on short notice, took part in the scheduled hearing on his behalf, cross-examining the witnesses who testified.
At the hearing, the court received and heard evidence regarding the execution of the 2006 testament. Other testimony taken at the hearing concerned whether John Simon was ever adopted by Willie Lain, as well as Nelda’s familial relationship with *1208 the decedent and John Simon. Mary’s brother-in-law, Athen Flournoy,[1] her brother, Martel Lain, Jr., and Mary herself all testified to the effect that no one in the family had ever even heard of Nelda until around the time that Rosie Lain died. There had only Rbeen vague family references to a daughter of John Simon. Martel Lain, Jr., testified that he never saw any adoption documents for John Simon, and Mary testified there were none in the safe-deposit box.
On the other hand, Nelda’s mother, Shirley Doyle, testified that Nelda was John Simon’s biological daughter and that Nelda had a familial relationship with Willie Lain since high school. She also claimed that Willie Lain told her he adopted John Simon, but she never personally saw the adoption documents. Willie Lain’s longtime friend, Roy Hilliard, also testified that Willie Lain told him that Nelda was his granddaughter and that adoption papers for John Simon and for Mary were in the safe-deposit box. Hilli-ard testified initially that. Willie Lain told him that an adoption of John Simon occurred after Rosie died in 2006, but then on cross-examination, he stated that the adoptions must have been when they were minors in the 1950s. He admitted that he never saw adoption papers in the safe-deposit box, and he never read any purported adoption documentation. Nelda also testified that the one time she entered the safe-deposit box with Willie Lain, she saw a judgment of adoption of John Simon.
Documentary evidence consisting of obituaries of John Simon, Rosie Lain, and Willie Lain were introduced to show that John Simon was adopted by Willie and Rosie Lain. Each obituary stated that John Simon was their “adopted” child.
Finally, after the testimony was completed, just at the end of the hearing, Nelda submitted into evidence a letter purportedly written by Willie Lain (hereinafter the “Disputed Letter”) in which he refers to the | better’s recipient as “granddaughter.” Nelda stated that in 2012 she had been attempting to call Willie Lain to invite him to her daughter’s graduation in Florida, but was having trouble reaching him, so she sent him a letter instead. The Disputed Letter was Willie Lain’s response to Nelda.
The Disputed Letter was admitted into evidence as additional circumstantial proof of a familial relationship among Nelda, John Simon, and Willie Lain. The Disputed Letter is difficult to read, due to lack of punctuation and the poor handwriting, but it appears to state as follows:
hi grand daddy I receive your some time a go I sill having trouble with the phone Thank for give me in [illegible] But I cant come down there I am old I have to stay home I am get weak you say is almost get John [illegible] good luck Diona will grad June 1 2012 Tell her gran-pa say good luck this is a gift for her $300.00. I am sill having [illegible] over in [illegible] But if I walk or die you and Mary wont have get a law youal get to gether go in the bank, look in box all papper is in the box your daddy you are the only child he had so he die that make get if I get the phone in good I give you a call
hug my great daughter neck for me
All for now grand daddy
// W J Lain
P.O. Box 72
Chase La 71824
*1209 The Disputed Letter never listed the name of Nelda Lawrence. However, Nelda also introduced into evidence an envelope postmarked in May 2012 and addressed to Nelda. Nelda also submitted a check dated May 22, 2012, for $300 written on the Winnsboro bank account and signed by W.J. Lain to Nelda’s daughter as payee.
Nelda had also filed earlier with her petition to annul the 2006 testament a translation of the Disputed Letter that she prepared. It interprets the last lines of the Disputed Letter as follows:
|8[Y]ou al[l] get together, go in the bank, look in box. All paper is in the box. Your daddy, you are the only child he had, so he die that make [you] get [it]. I get the phone in good, I give you a call. Hug my great [granddaughter neck for me. All for now, Grand-Daddy-
This interpretation was not attempted to be introduced as evidence at the trial.
Following the hearing, the trial court rendered its written judgment, which decreed that the Texas judgment be given full faith and credit concerning the recognition of Nelda as the natural daughter of John Simon. Then, the judgment states:
[T]he Will of Willie James Lain and it’s [sic ] Codicil be probated and the Plaintiff, Mary Lee Lain and Defendant, Nelda Freeman Lawrence (through her deceased father, the late John Simon hereinabove) be recognized as legatees of the late Willie James Lain and as such, are entitled to one interest each of the entire estate.
The court had explained in its oral reasons for judgment that it was probating the Disputed Letter as an olographic testament, or codicil, to the 2006 testament. The court expressed that it felt Willie Lain’s intentions were clear that Willie Lain wished his estate to be evenly divided between Mary and Nelda. The trial court found that the “codicil” made the issue of whether John Simon was adopted moot. Although noting that the Disputed Letter “is technically deficient as a holographic [sic] will because there is not a clear date on it,” the court found that the letter “clearly states that [Nelda] takes John’s place.”

Applicable Law

A testament must be in the form of a notarial will or an olographic will. See La. C.C. arts. 1570 and 1574. Otherwise, the testament is null and unenforceable. See La. C.C. arts. 1570 and 1573. Any modification of a | fltestament must be in one of the forms prescribed for testaments. La. C.C. art. 1610. An olographic testament is a will entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575(A). The date may be anywhere in the testament. Id. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary. Id.
Furthermore, the document itself must evidence testamentary intent to be a valid testament. In re Succession of Rhodes, 39,364 (La.App.2d Cir.03/23/05), 899 So.2d 658, writs denied, 05-0936, 05-1044 (La.6/3/05), 903 So.2d 459, 460. In the absence of a testamentary intent, there cannot be a will. Id., citing Succession of Patterson, 188 La. 635, 177 So. 692 (1937); In re Succession of Plummer, 37,243 (La.App.2d Cir.5/14/03), 847 So.2d 185, writ denied, 03-1751 (La.10/10/03), 855 So.2d 323; Hendry v. Succession of Helms, 557 So.2d 427 (La.App. 3d Cir.1990), writ denied, 560 So.2d 8 (La.1990). Such intent must exist when the instrument is executed and must apply to the particular instrument produced as a will. Id. A paper is not established as a person’s will merely by proving that he intended to make a disposition of his property similar to or *1210 even identically the same as that contained in the paper. Id. It must satisfactorily appear that he intended the very paper to be his will. Id. It is well settled that extrinsic or parol evidence cannot be used to establish testamentary intent. In re Succession of Plummer, supra; In re Succession of Bemstine, 04-793 (La.App.3d Cir.12/22/04), 890 So.2d 776, writ denied, 05-0182 (La.4/22/05), 899 So.2d 555.
11flAlthough a letter per se is not invalid as an olographic testament, see Succession of Cordaro, 126 So.2d 809 (La.App. 2d Cir.1961); In re Succession of Bemstine, supra; see also In re Billis’ Will, 122 La. 539, 47 So. 884 (1908), the letter must evidence a testamentary intent to be probated as a will.
In Succession of Rhodes, supra, the decedent wrote a letter to his attorney with a “set of instructions regarding the future preparation of another will.” The decedent gave the attorney specific instructions regarding his estate, including a de facto disinherison of his son as well as specific bequests of each half of his estate. The court found that the decedent did not intend the letter to be his will.
In Succession of Plummer, supra, the decedent attempted to create an inter vi-vos trust in which he wrote handwritten instructions designating beneficiaries and division of the trust property upon his death. However, the court found that “[d]espite the fact that the document contains expressions which reflect Mr. Plum-mer’s intention to direct the division of his property upon his death, there are few words, if any, signifying bequests.” Thus, the court affirmed the trial court’s determination that there was no testamentary intent. Id.
In Succession of Carroll, 08-89 (La.App.5th Cir.06/19/08), 988 So.2d 778, writ denied, 08-1631 (La.10/24/08), 992 So.2d 1034, the decedent, just before traveling to Hawaii to get married, handwrote a letter to his attorney in which he instructed certain assets to be distributed to his wife should he die before he saw his attorney personally. The letter provided that _[_u certain assets were to go to his wife if he died before the marriage and for certain assets to go to her if he died after the marriage. Months later, the decedent gave the attorney another writing allocating various assets to different people. The decedent had a pre-existing notarial will. A new will was never prepared with the detailed asset allocations. The widow then probated these letters as a codicil, after which the legatees under the prior testament petitioned to annul. The court found that nothing in the document itself showed a testamentary intent, and thus the writing was not a valid codicil. Id. at 782.
A testament has no effect unless it is probated in accordance with the requisites of the Code of Civil Procedure. La. C.C. art. 1605. If a will is in the form of an olographic testament and is in the possession of the petitioner, he shall present it to the court and pray that it be probated and executed. See La. C.C.P. art. 2852(B). An olographic testament must be proved by the testimony of two credible witnesses that the testament was entirely written, dated, and signed in the testator’s handwriting. La. C.C.P. art. 2883(A).
A legacy is either universal, general, or particular. La. C.C. art. 1584. A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies. La. C.C. art. 1585. A universal legacy may be made jointly without changing its nature. Id. A general legacy is a disposition by which the testator bequeaths a fraction or a certain portion of his estate. La. C.C. art. 1586. A general legacy may also be a fraction or certain proportion of the balance of the estate that remains after hoparticular legacies. Id. In addition, a *1211 disposition of property expressly described by the testator as all, or a fraction or certain proportion of one of the following categories of property, is also a general legacy: separate or community property, movable or immovable property, or corporeal or incorporeal property. Id. A legacy that is neither general nor universal is a particular legacy. La. C.C. art. 1587.
Any of these types of legacies may be joint or separate. A legacy to more than one person is either joint or separate. La. C.C. art. 1588. It is separate when the testator assigns shares and joint when he does not. La. C.C. art. 1588. Nevertheless the testator may make a legacy joint or separate by expressly designating it as such. Id. The jurisprudential rule is that a legacy made to multiple people “to be shared and shared alike” or “shared equally” is a designation of shares and thus a separate legacy, unless the testator clearly had a contrary intent. See Succession of Lambert, 210 La. 686, 28 So.2d 1 (1946); see also Succession of McCarron, 247 La. 419,172 So.2d 68 (1965).
A legacy lapses when the legatee predeceases the testator. La. C.C. art. 1589(1). Accretion of a lapsed legacy takes place according to the testament, or in the absence of a governing testamentary provision, according to the following rules. La. C.C. art. 1590. When a particular or a general legacy lapses, accretion takes place in favor of the successor who, under the testament, would have received the thing if the legacy had not been made. La. C.C. art. 1591.
| ^Generally, when a legacy to a joint legatee lapses, accretion takes place rat-ably in favor of the other joint legatees. La. C.C. art. 1592. However, if a legatee, joint or otherwise, is a child or sibling of the testator, or a descendant of a child or sibling of the testator, then to the extent that the legatee’s interest in the legacy lapses, accretion takes place in favor of his descendant by roots who were in existence at the time of the decedent’s’ death. La. C.C. art. 1593.
All legacies that lapse, and are not disposed of under the preceding rules, accrete ratably to the universal legatees. La. C.C. art. 1595. When a general legacy is phrased as a residue or balance of the estate without specifying that the residue or balance is the remaining fraction or a certain portion of the estate after the other general legacies, even though that is its effect, it shall be treated as a universal legacy for purposes of accretion. Id.
Any portion of the estate not disposed of under the foregoing rules devolves by intestacy. La. C.C. art. 1596.
Filiation is established by proof of maternity or paternity or by adoption. La. C.C. art. 179. Upon adoption, the adopting parent becomes the parent of the child for all purposes. La. C.C. art. 199. Currently, the adoption of minors is governed by the Children’s Code. La. C.C. art. 200. The adoption of adults may be confected by authentic act. See La. C.C. art. 213. Adoption is a creature of statute, and all the statutory requirements must be strictly carried out; otherwise the adoption is an absolute nullity. In re Byrd, 226 La. 194,199, 75 So.2d 331, 332 (1954).
Adoptions of minors that occurred in the 1950s were governed by 114Louisiana Acts 1948, No. 228 (the “Act”), titled, “Providing full procedure for adoption of children under seventeen years of age; for keeping vital statistics; for safeguarding records; for appeals; for changing name; for repose; for costs; for protecting prior proceedings, divisibility, and repeal.” Much like the provisions for adoption under the Children’s Code, this Act required judicial approval of adoptions following detailed procedure. See Acts 1948, No. 228. The adopting parents were required to petition the court, and the petition was mandated *1212 to be sent to the State Department of Public Welfare. Id., §§ 2, 5. The court, after a hearing, could either enter a final decree of adoption or deny the adoption. Id., § 12. The clerk of court was required to forward a certified copy of the adoption decree to the Department of Public Welfare. Id. The clerks of the Juvenile Courts were required to keep separate indices of all suits filed in accordance with the Act, and they were required to index the suits in the name of the parties filing the petition and in the name of the child to be adopted. Id., § 17. All adoption records of agencies were to be retained in confidential files. Id.
Some courts have held that secondary or parol evidence can be offered to establish an adoption if the document is lost or destroyed. See Succession of Hilton, 175 So.2d 866 (La.App. 2d Cir.1965); Succession of Gussman, 288 So.2d 665 (La.App. 3d Cir.1974); Lyons v. Goodman, 78 So.2d 424 (La.App. 1st Cir.1955). Under those cases, the person alleging an adoption must prove (1) the adoption document in fact existed; (2) the contents of the document by a person with personal knowledge thereof; and 115(3) it was in fact lost or destroyed. Otherwise the adoption instrument must be submitted for proof of the adoption.
However, upon studying these cases, it is clear that this rule providing for parol evidence of adoptions applies only to adoptions that occurred at a time when minors could be adopted by a private notarial act. See Succession of Hilton, supra, at 368; Succession of Gussman, supra, at 667-68; Lyons v. Goodman, supra, at 427-28. Judgments of adoption were not required, and such private acts could be much more easily lost or destroyed. Now, as was the case under the Act, a decree of adoption must be rendered, and detailed records of the proceedings and judgment are kept. Therefore, the parol evidence rule for notarial acts of adoption do not apply to adoptions obtained under procedures requiring a judgment.

Discussion

The trial court in this case probated the 2006 testament. Additionally, the Disputed Letter Willie Lain wrote to Nelda was effectively probated as a modification, or codicil, of the 2006 testament. Pursuant to these rulings, the trial court ordered that Mary and Nelda be awarded “one interest” each. Mary appeals the judgment, arguing that the Disputed Letter should not have been probated because it was not in valid olographic form. She also disputes that the Texas judgment can be given full faith and credit and preclusive effect for the determination of filiation between John Simon and the testator. Further, she argues that the Texas judgment was not timely obtained, citing the peremptive period for a child’s action to establish paternity under La. C.C. art. 197.
|1fiMary also argues that Nelda failed to prove that John Simon was adopted by Willie Lain. As a result, she claims John Simon’s lapsed legacy in the 2006 testament accretes to her as universal legatee, rather than to Nelda as provided in La. C.C. art. 1593.
Nelda’s claim at the trial court level was that the 2006 testament was invalid because it was not properly executed. As a result, her position was that she was the sole descendant and intestate heir as the result of Willie Lain’s adoption of John Simon. Nevertheless, by recognizing Mary’s legacy and Nelda’s receipt of John Simon’s lapsed legacy, the judgment rejects Nelda’s and Arthur Lain’s claims that the 2006 testament is invalid. Arthur Lain did not appeal. Nelda did not answer the appeal or reassert in argument to this court the invalidity of the 2006 testament. Thus, no error is asserted concerning the probate of the 2006 testament.

*1213
Probate of Willie Lam’s Disputed Letter as a Codicil

In reviewing the trial court’s enforcement of the Disputed Letter as a will, we first note the arbitrary procedure employed. The letter was never submitted for probate under the procedures provided for under the Code of Civil Procedure as La. C.C. art. 1605 requires. The Disputed Letter, clearly not in notarial form, must be probated as an olographic will, which requires the testimony of two witnesses that the handwriting is that of the testator. La. C.C.P. art. 2883(A). Second, it is clear from the record that Nelda submitted the Disputed Letter into evidence not as a will, but as circumstantial evidence that she is John Simon’s daughter and that John Simon was adopted by Willie Lain. In fact, her position at trial was that |17she was an intestate heir of Willie Lain. She was arguing for the invalidity of the 2006 testament—not for its amendment to include her as a legatee. The arbitrary nature in which this Disputed Letter was “probated” is clear legal error.
Nevertheless, it is also clear from the record that the Disputed Letter is not in valid form as an olographic will or codicil. This document on its face has no date on it. Extrinsic evidence may be considered to clarify an ambiguous date, but extrinsic evidence may not be provided for an absent date. See Succession of Boyd, 306 So.2d 687, 692 (La.1975); La. C.C. art. 1575(A).
Furthermore, the Disputed Letter clearly and facially lacks testamentary intent. There is no evidence from the writing itself that Willie Lain intended this letter to be a testament to his last will. The Disputed Letter was written in response to a letter that Nelda had sent Willie Lain asking him to attend her daughter’s graduation. Most of the Disputed Letter’s contents are references to the graduation and how Willie Lain cannot attend because of his health. Willie Lain also used the opportunity to send a gift of $300 to Nelda’s daughter. The part of the letter that Nelda argues as a bequest is the phrase, “your daddy you are the only child he had so he die that make get if.” This completely vague statement in the overall context cannot be construed as an amendment to the 2006 testament. See In re Succession of Rhodes, supra; In re Succession of Plum-mer, supra; Succession of Carroll, supra; In re Succession of Bemstine, supra.
11sThus the Disputed Letter fails to meet the formal requirements of a valid olo-graphic will, and thus it also fails to meet the requirements of an olographic modification of the 2006 testament.

John Simon’s Lapsed Legacy

We find that the record does not establish that John Simon was the adopted child of Willie Lain. Thus, because John Simon was not a child of the testator, the lapsed legacy does not accrete in favor of his descendant under La. C.C. art. 1593.
Nelda was unable to provide any documents evidencing John Simon’s adoption at the trial court. Nelda and Mary requested from the Franklin Parish Clerk of Court any adoption records of John Simon, and no results were produced. Nelda alleges the adoption occurred sometime in the 1950s, when John Simon was a minor. The only person who testified concerning whether an adoption occurred was Hilli-ard, who stated the adoption must have occurred in the 1950s, as Nelda alleges. Because adoption is a legislative creation with which the requirements must be strictly complied, In re Byrd, supra, the absence of any adoption decree is fatal to Nelda’s claim that John Simon was adopted. The procedures in effect at the time required a judgment, rather than a mere notarial act, and the records were required to be maintained. Given that such records should be easily obtainable, *1214 simply alleging that an adoption occurred is insufficient.
Nelda asserts that the Texas judgment declaring heirship precludes the determination of John Simon’s adoption in this proceeding. We disagree.
119Under the Full Faith and Credit clause of the U.S. Constitution (U.S.C.A. Const. Art. IV § 1), a Louisiana court must give the judgment of another state the same conclusive effect between the parties that the judgment would be given in the state where it was obtained. Harrah’s Club v. Mijalis, 557 So.2d 1142 (La.App. 2d Cir.1990), writ denied, 559 So.2d 1387 (La.1990). Full Faith and Credit mandates that the court of each state give to the judgments of other states the same conclusive effect between the parties as is given such judgments in the states in which they were rendered. Brown v. Brown, 377 So.2d 438 (La.App. 2d Cir.1979), ajfd, 387 So.2d 565 (La.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 615 (1981), citing Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943). Under Texas law, a party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.1994).
The Texas judgment makes no determination of John Simon’s parentage. Although nearly all the documents titled “Proof of Heirship” that memorialize the testimony in the Texas proceeding contained phrases stating that John Simon was adopted by Willie Lain, that fact has no bearing on whether Nelda is John Simon’s biological daughter and entitled to inherit from the estate of John Simon in Texas. See Tex.Code Ann. §§ 201.002-003, 201.052, and 202.0025. Because no actual determination that John |2flSimon was adopted by Willie Lain was made or essential to the heirship determination in those proceedings, the Texas judgment does not preclude a determination, in Willie Lain’s Louisiana succession, of John Simon’s alleged filiation by Willie Lain.
Accordingly, we find that Nelda did not adequately establish that John Simon was a child legatee of Willie James Lain.

The Legal Effect of John Simon’s Lapsed Legacy

Finally, with Nelda’s claims for an interest in. the succession now dismissed, the issue: left unaddressed is the legal effect of John Simon’s lapsed legacy. That legacy as expressed by the decedent was of the entire estate to Mary Lain and John Simon “to be shared equally.” The will contained no provision for lapsed legacies.
Wé have set forth above the rulings of the Louisiana' Supreme Court in Succession of Lambert, swpra, and Succession of McCarron, supra. These early rulings appear to remain controlling after our more recent revisions of the law of inter vivos donations and successions. Thus, in light of this jurisprudence and the above cited article of the Civil Code, the intestate heirs of Willie Lain may assert rights in accordance with La. C.C. art. 1596 concerning the lapse of John Simon’s legacy. The record indicates that Willie Lain has other intestate heirs in addition to Arthur Lain and Mary. Their identities are not clear, and most importantly, they have not been made parties to this succession proceeding. We therefore pretermit any ruling concerning the disposition of that portion of the estate pertaining to the lapse of John Simon’s legacy. We remand the case to the trial court |2ifor the joinder of the intestate heirs of Willie Lain, and for further proceedings on this question.

*1215
Conclusion

Because we find the Disputed Letter to Nelda Lawrence invalid in form as well as lacking testamentary intent, Willie Lain did not specifically add Nelda as a legatee of his estate. Because Nelda did not show that John Simon was the adopted child of Willie Lain, she is not entitled to the lapsed legacy to John Simon in Willie Lain’s 2006 testament. The judgment of the trial court is therefore reversed insofar as it failed to dismiss all claims of Nelda Lawrence. The case is remanded for a determination of Willie Lain’s intestate heirs, their joinder in this proceeding, and a determination of the effect of the lapsed legacy of John Simon. Costs of this appeal are assessed to appellee.
REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, MOORE and LOLLEY, 33.
Rehearing denied.

. A video was entered into evidence that Flournoy filmed. On this video, Willie Lain explains to everyone the contents of the 2006 testament and states that it was in the safe-deposit box.