BLEICH, J. (Pro Tempore )
*1228 In this succession proceeding, Bryon K. Tedeton, Sr., son of Clayton L. Tedeton, decedent, appeals the trial court's dismissal of his petition for probate of a purported olographic testament by the decedent. For the following reasons, we affirm the trial court's judgment.
FACTS
Clayton Tedeton died on July 5, 2007, and it was initially believed he died intestate. Clayton is survived by his wife, Patsy Jean Tedeton; son, Bryon "Kirk" Tedeton, Sr.; and two daughters, Deborah Davis and Pamela Savage. After Clayton's death, Patsy visited with an attorney concerning Clayton's estate. She told the attorney that possibly Clayton's only significant asset was his ownership interest in Tedco, Inc. ("Tedco"), a company founded by Clayton and Kirk in 1982 to sell soap products called Miracle II. Thereafter, Patsy's attorney contacted Kirk to obtain documents of corporate ownership so that he might confirm or dismiss any possible interest of Clayton in Tedco. In response, Kirk provided a stock certificate stating that he was the owner of all 1,000 shares that Tedco was authorized to issue, and Clayton had no ownership interest in the company.
In October 2007, in an attempt to settle the dispute over Tedco's ownership, Kirk filed a petition for declaratory relief, naming his mother, Patsy, and sisters, Debbie and Pam, as the defendants, and requested he be declared the owner of all Tedco stock at the time of Clayton's death. This began a litigious family quarrel over Clayton's estate. After the hearing on Kirk's petition, the trial court did not address the issue of Tedco's ownership, but instead initially decreed that the Miracle II formula was the community property of Patsy and Clayton and not an asset of Tedco. See Tedeton v. Tedeton , 46,901 (La. App. 2 Cir. 2/8/12), 87 So.3d 914 (" Tedeton I ").
Upon remand, the parties presented no further evidence. Rather, the parties made several factual stipulations and submitted the case for decision. The parties stipulated that: (1) Tedco is a validly formed Louisiana corporation and its articles of incorporation were filed on March 11, 1982; (2) the articles of incorporation identified Clayton and Kirk as Tedco's incorporators, registered agents, and the only directors; (3) Tedco has maintained its corporate existence since its inception; and, (4) Clayton transferred any and all rights he owned in the original formula utilized in the production of Miracle II soap to Tedco. The dispute over Tedco's ownership resulted in a determination that, at the time of Clayton's death, Kirk owned 50% of all issuable shares in Tedco, and Clayton owned the other 50% of the shares. This judgment was affirmed on appeal. See Tedeton v. Tedeton , 48,840 (La. App. 2 Cir. 3/12/14), 137 So.3d 686 (" Tedeton II ").
The Succession of Clayton Tedeton was opened by Patsy on August 12, 2010, and was eventually joined as a necessary party to the Tedco ownership suit. See Tedeton I and II . After some disagreement, Patsy was appointed administratrix of Clayton's estate but ordered not to interfere with the management or business of Tedco. In addition, so that Patsy could waive the bond required for estate administration, Kirk remained in physical possession of all assets supposedly belonging to Clayton's estate, including the family home and furnishings; a 10-karat diamond ring; and all of Tedco's stock and assets, namely the Miracle II formula. In 2012, upon receipt of the requested financial records for Tedco, Patsy filed another petition within the succession alleging that Kirk had transferred a significant amount of Tedco's assets to another company owned by Kirk. Patsy also claimed the financial records show that Kirk had been diverting sales *1229 from Tedco to Kirk's other company while these collective suits were ongoing.[1]
On August 11, 2015, almost five years after the succession was opened, Kirk timely filed a petition seeking to probate a purported olographic testament written by Clayton in 1988 and supposedly leaving Tedco to Kirk alone. The subject document, in its entirety, reads as follows:
10-20-88
ON THIS DAY, Oct. 20, 1988,I give all my part ofTedco Inc. to my son KirkTedeton so he can carryon as he wishes.
/s/ Clayton Tedeton
As of this date Oct. 20, 1988Kirk is sole owner ofTedco Inc.
In response, Patsy filed a motion to dismiss Kirk's petition, claiming the document offered for probate lacked the requisite testamentary intent.
During the hearing on the motion to dismiss, the subject document was entered into evidence as a joint exhibit. On August 19, 2016, the trial court rendered a final judgment, in accordance with La. C.C.P. art. 1915(B), on the issue of testamentary intent.[2] The trial court ruled that the document offered for probate by Kirk was not a valid will, and granted Patsy's motion to dismiss the petition, which would allow the Succession of Clayton to proceed intestate. It is from this judgment that Kirk now appeals.
DISCUSSION
In this appeal, Kirk sets forth three assignments of error. His first two assignments are related and pertain to the trial court's determination regarding the existence of testamentary intent.
Testamentary Intent
There are two forms of testaments in Louisiana: olographic and notarial. La. C.C. arts. 1570 and 1574. Louisiana C.C. art. 1575 states:
A. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Although the date may appear anywhere in the testament, the testator must sign the testament at the end of the testament. If anything is written by the testator after his signature, the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament . The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.
B. Additions and deletions on the testament may be given effect only if made *1230 by the hand of the testator. [Emphasis supplied].
The fundamental question in all cases involving statutory interpretation is legislative intent. City of DeQuincy v. Henry, 2010-0070 (La. 3/15/11), 62 So.3d 43, 46. Further, according to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself. In re Succession of Faget, 2010-0188 (La. 11/30/10), 53 So.3d 414, 420. While the Official Revision Comments are not the law, they may be helpful in determining legislative intent. Tracie F. v. Francisco D ., 2015-1812 (La. 3/15/16), 188 So.3d 231, 238 ; State v. Jones, 351 So.2d 1194 (La. 1977).
Louisiana C.C. art. 1575 was amended by Acts 2001, No. 824, which legislatively overruled a previous judicially created rule. The 2001 Revision Comment in that Act, although not controlling, is most significant and indicative of legislative intent:
The 2001 amendment is intended to legislatively overrule Succession of King , 595 So.2d 805 (La. App. 2 Cir. 1992), which held that in an olographic testament the signature should be at the end of the testament. Otherwise, the amendment was not intended to change the law in any manner, but only to clarify it. [Emphasis supplied].
The 2001 amendment of article 1575, together with the explanatory revision comment, make it apparent that the issue addressed by the legislature concerned only form, not testamentary intent.[3]
The only additional requirement for an olographic will is that the document itself must evidence testamentary intent to be a valid testament. Succession of Rhodes , 39,364 (La. App. 2 Cir. 3/23/05), 899 So.2d 658, 660, writs denied , 2005-0936, 2005-1044 (La. 06/03/05), 903 So.2d 459, 460. To demonstrate testamentary intent, the document must, by its own language, show on its face that it purports to dispose of the testator's property at the time of his death. Succession of Cannon , 2014-0059 (La. App. 1 Cir. 3/25/15), 166 So.3d 1097, 1101-02, writ denied , 2015-0816 (La. 6/5/15), 171 So.3d 948. In the absence of testamentary intent, there cannot be a will. Succession of Patterson, 188 La. 635, 177 So. 692 (La. 1937) ; Successions of Lain , 49,261 (La. App. 2 Cir. 8/20/14), 147 So.3d 1204, 1209. Such testamentary intent must exist when the instrument is executed and must apply to the particular instrument produced as a will. Succession of Rhodes , supra . A paper is not established as a person's will merely by proving that he intended to make a disposition of his property, similar to or even identically the same, as that contained in the paper-it must satisfactorily appear that he intended that very paper to be his will. Successions of Lain , supra , at 1210,. It is well settled that extrinsic or parol evidence cannot be used to establish testamentary intent. Id.
In evaluating this one-page, handwritten note, purportedly being Clayton's last will and testament, the trial court exercised its sound discretion and included the second sentence as "part of" the testament for the purposes of determining Clayton's intent in confecting this document. Thus, the issue herein is whether the trial court manifestly abused its discretion by considering the second sentence when evaluating the existence of testamentary *1231 intent. The clear language of article 1575, together with the 2001 Revision Comment, confirms the trial court acted within its discretion. See Succession of Cannon , supra (where the document in question was signed and dated at the top, but, regardless of the placement of the signature, the court determined the will must be read as a whole to determine whether testamentary intent was present at the time the document was executed).
The subject document contains two sentences. The first sentence states: "On this day, Oct. 20, 1988, I give all my part of Tedco Inc. to my son, Kirk Tedeton, so he can carry on as he wishes." The second sentence, which follows Clayton's signature, states: "As of this date, October 20, 1988, Kirk is sole owner of Tedco Inc." The trial court recognized that the dispositive language indicated Clayton's intent that Kirk should have his "part of Tedco," and that Clayton's intent to dispose of his property was temporally contemporaneous with confection of the document.
Although Kirk argues the phrase "carry on as he wishes" is indicative of contemplating death, this phrase is vague and indefinite, and not clear or specific enough to require a finding that Clayton was contemplating death at the time the document was executed. See Succession of Bernstine , 2004-739 (La. App. 3 Cir. 12/22/04), 890 So.2d 776, 780. Additionally, Kirk argues the words "give" and "carry on" in Clayton's writing are comparable to the word "leave," which should be taken to mean "bequeath," because the court should permit a "layman language" exception. See Succession of Hammett , 183 So.2d 416, 418 (La. App. 4 Cir. 1966), writ denied , 249 La. 66, 184 So.2d 735 (La. 1966). This argument is not persuasive; these words must be interpreted in the context of the entire document. In Hammett , the phrase "I leave nothing" to my ex-husband, is not similar or comparable to the phrases contained in the subject document. It is evident on the face of the subject document that Clayton intended to give his interest in Tedco to Kirk the very day he signed the paper.[4]
We reject Kirk's argument regarding Carter v. Succession of Carter , 332 So.2d 439 (La. 1976), because the question there did not address determining the presence of testamentary intent, but instead related to probate of a valid olographic will, which had been previously found to evidence testamentary intent. The interpretations contemplated in Carter apply to what the testator intended to bequeath to certain legatees, which is not the same as the determination of whether or not a document offered for probate possesses any testamentary intent.
Under the facts of this case the only necessary consideration is the examination of the proffered document in comparison to the clearly written code article and comment. Here, the subject document, a purported olographic will of Clayton Tedeton, does not reveal testamentary intent and is not a valid will. Moreover, Kirk's reliance on Carter , supra , is misplaced. It is clear, from the 2001 amendment to La. C.C. art. 1575, and the cases which have interpreted the article since, that any words written in the hand of the decedent contained within the four corners of the document offered for probate may be considered *1232 in determining the presence of testamentary intent. See Succession of Cannon , supra , and Succession of Bernstine , supra .
We find the second sentence is within the four corners of the document and unquestionably related to the matter of determining testamentary intent. The trial court did not err in its interpretation of the code articles applicable to olographic wills or its use of discretion to consider the second sentence as part of the document for the purpose of determining testamentary intent. These assignments of error lack merit.
Motion to Dismiss
In his third assignment of error, Kirk argues the trial court erred by dismissing his petition to probate and granting Patsy's motion to dismiss. Kirk claims the law entitles him to an opportunity to conduct discovery and present evidence at a contradictory hearing. We disagree.
This assignment is pretermitted by the finding that the document offered for probate does not possess testamentary intent. We note that the trial court carefully and dutifully allowed each side a full opportunity to present evidence and arguments on the issue of whether or not the subject document met the requirements necessary to be considered an olographic will. If this matter were remanded for yet another contradictory hearing, the result would be identical because the only consideration could be that which is already in evidence-the purported olographic will.
CONCLUSION
The trial court neither erred in its interpretation of the Civil Code article applicable to olographic wills, nor its use of discretion to consider the second sentence in its determination that the subject document lacks testamentary intent. We affirm the ruling of the trial court in favor of Patsy Jean Tedeton, Pamela Savage, and Deborah Davis, dismissing Kirk's petition to probate. Bryon "Kirk" Tedeton, Sr., shall be cast with all costs associated with this appeal.
AFFIRMED.

Arguments regarding this alleged breach of fiduciary duty were heard by the trial court at the same hearing that concerned the petition to probate and subsequent motion to dismiss the petition. Patsy claims that Kirk has stripped Tedco of its assets and transferred them to another company, Miracle II, LLC, a Delaware corporation established in 2008 by Kirk. In response, Kirk argues that the exceptions of peremption, prescription and res judicata bar any action related to the mismanagement of Tedco by Kirk as an officer of such, claiming this issue should have been filed within, and was actually litigated during, Tedeton I & II . The trial court has yet to rule on these exceptions, pending the current appeal concerning the purported olographic will, which bears on the question of Tedco's ownership.

Louisiana C.C.P. art. 1915(B) allows the trial court to render a partial judgment on one or more issues and, after an express determination that there is no just reason for delay, designate that partial judgment as a final judgment for the purpose of appeal.

An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575. Here, the parties have stipulated that the document is entirely written, dated, and signed in Clayton's handwriting, or, at least, the challenge to authenticity was pretermitted until a conclusion is reached on whether or not the document has the testamentary intent required to be considered a valid will.

As noted by the trial court, the subject document is vague as to what "part" of Tedco Clayton wished to transfer to Kirk, which may indicate Clayton recognized his ownership interest was subject to the community property regime or that he considered some part of Tedco to belong to Patsy and possibly even his daughters. Nevertheless, this type of determination-deciphering the actual intent of the testator-is never reached under these facts because the subject document is not a valid will.