Judgment rendered March 30, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,338-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF BETTYE LOU THOMAS MOORE

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 5,054

Honorable Laurie Reis Brister, Judge

* * * * *

| | |
|---|---|
| THE RAYMOND LEE CANNON LAW FIRM, LLC<br>By: Raymond Lee Cannon | Counsel for Appellant,<br>Johnny Cardelle McDonald |
| JEFFREY M. LANDRY<br>Attorney General | Counsel for Appellee,<br>Madison Parish Registrar of Voters |
| JEFFREY MICHAEL WALE<br>Special Assistant Attorney General | |
| HAYMER LAW FIRM<br>By: Niles B. Haymer | Counsel for Appellees,<br>Lee A. Thomas; Joe Thomas, Jr.; Curtis Nash; Frankie T. Solomon; and Delores Kline |
| VIVIAN THOMAS KLINE | In Proper Person,<br>Appellee |
| STEVE THOMAS | In Proper Person,<br>Appellee |
| DAWN KLINE | In Proper Person,<br>Appellee |

* * * * *

Before THOMPSON, ROBINSON,
and O'CALLAGHAN (*Pro Tempore*), JJ.

**THOMPSON, J.**

The siblings of a decedent challenged her purported olographic testament alleged to have been written just hours before her death, asserting it was neither written nor signed by the decedent. After a two-day trial that included the testimony of several witnesses and an expert witness in forensic document examination, the trial court found the testament to be invalid and not to have been signed by the decedent. The former stepson of the decedent, who was the primary beneficiary of the olographic testament, appealed the trial court's ruling, asserting 16 assignments of error. Finding those assignments of error to be harmless or without merit, we affirm the trial court's judgment.

## FACTS

The origin of the dispute in this matter is the validity of a purported olographic testament ("will") of Bettye Lou Thomas Moore ("Moore"), who died of a heart attack at about 8:30 p.m. on December 9, 2018. The will was allegedly written and signed by Moore at 3:46 p.m. on the day of her death. The will is three pages in length including signatures, and names her former stepson, Johnny "Cardelle" McDonald ("McDonald"), as the primary beneficiary.

Moore's siblings opposed the validity of the testament, which contained numerous spelling, grammatical, and other errors, and asserted that Moore was a notary public well-versed and experienced in preparing last wills and testaments for people. They argued she had helped others prepare wills on many occasions over the years and was familiar with the legal requirements for those documents to be valid. They point to Moore's

education, experience in legal matters, her time as Registrar of Voters, and her vast experience as a Notary Public preparing and notarizing wills as evidence contrary to the assertion that Moore wrote or signed what they asserted was a defective olographic testament, which inexplicably included witness signatures and in which Moore notarized her own signature.

The applicable provisions of Louisiana's Civil Code relative to olographic testaments are in La. C.C. Art. 1575, which provides:

La. C.C. Art. 1575. Olographic testament

A. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Although the date may appear anywhere in the testament, the testator must sign the testament at the end of the testament. If anything is written by the testator after his signature, the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament. The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.

B. Additions and deletions on the testament may be given effect only if made by the hand of the testator.

At trial on this matter, McDonald testified that Moore called him in the morning on the day of her death, telling him she was not feeling well. Before she went to the hospital later that day, the only people to see Moore in her home were McDonald, his girlfriend, LeDedra Johnson ("Johnson"), and Johnson's friend, Antonya Dugano ("Dugano"). McDonald is the son of Moore's former husband. While there is conflicting testimony regarding just how close Moore and McDonald were on the date of Moore's death, it is clear that they had a longstanding relationship and McDonald had known Moore most of his life.

2

McDonald testified that after receiving Moore's telephone call, he and Johnson went to Moore's house to see her. McDonald and Johnson testified that they prepared food for Moore, went to the store for her, and watched television with her. Johnson testified that at some point during the day, Moore asked her to retrieve her books and a pen. They testified that Moore was talking about her death, and McDonald, who was uncomfortable, left the room. Johnson first testified that she saw Moore write, date, and sign the will. She admitted on cross-examination, however, that she may not have witnessed Moore draft the entirety of the will. McDonald also admitted on cross-examination to not seeing Moore draft the entirety of the will or being present for the witness signatures.

When Moore was allegedly almost done drafting the will, Johnson called Dugano, her friend who did not know Moore, to come to the house to witness the will, a step that is unnecessary for the validity of an olographic will. Dugano testified that Johnson's signature was already on the will when she arrived at the house. Johnson and Dugano stated that they saw Moore write a statement on the third page but did not know what she wrote. These assertions are contrary to the contents of the will submitted for probate, as there would be no statement for Johnson and Dugano to have seen Moore write on the third page of the will. There is only a statement above Moore's signature, which would logically have already been on the will before Moore signed the document. The will bears a date and time, and Moore is alleged to have signed it of 3:46 p.m. on December 9, 2018.

Johnson left the home to get dinner, and when she returned, Moore was ill. Johnson called 911 and was instructed to perform CPR. Moore was

3

taken to the Madison Parish Hospital and quickly thereafter died from a heart attack.

The purported olographic will is three handwritten pages long, allegedly signed and dated by Moore, and bequeaths the majority of her estate to McDonald, including her two houses, her bank account, and two vehicles (a GMC Hummer and a Nissan Juke). The remainder of her estate was left to "her two youngest siblings Vivian Kline and Steve Thomas." Johnson and Dugano signed the will as witnesses, and for still unclear reasons, Moore's signature and notarial stamp are at the bottom of the final page of the will under the signatures of the purported witnesses.

Testimony revealed that Moore had been the Registrar of Voters for Madison Parish for a number of years and was known to carry a laptop between work and her home. On the laptop, she prepared other people's wills for them. Multiple people testified at trial that Moore was a professional woman who had worked at a law firm and had extensive experience drafting wills and providing information to people to draft or write a valid will. Moore was known as meticulous and detail-oriented.

Within days of Moore's death, McDonald took the purported will to Marjorie Pitts ("Pitts"), who was Moore's longtime friend and had been named as executrix in the will. McDonald instructed Pitts to take the will to an attorney and have it probated. Interestingly, two weeks after Moore's death but before any judgment of possession had been rendered or authority

granted by the court to do so, McDonald had the title to Moore's Nissan Juke transferred solely into his name.[1]

The probate process began on December 19, 2018, and several weeks later, Moore's siblings learned about the existence of the will. Several of her siblings, namely Joe Thomas, Lee Andrew Thomas, Curtis Nash, Frankie Solomon, and Delores Kline (hereinafter collectively, the "opponents"), found it suspicious that Moore would draft an olographic will on the date of her unexpected death that left the majority of her assets to McDonald and was contrary to her long-expressed and well-known desire to benefit her siblings.

Moore had not previously expressed to any of the opponents or others any desire to leave her assets to McDonald and, instead, had always told her youngest sister, Vivian Kline ("Vivian"), that she would receive Moore's house one day. The opponents also found it suspicious that the will misstates that Vivian and Steve Thomas were Moore's youngest siblings, when, in fact, they are not.[2] The will also includes grammatical and spelling errors that the opponents did not believe Moore would make when drafting a will and that were clearly contrary to her previous work in preparing and notarizing wills for others. Finally, the opponents did not think that Moore's signature looked authentic. They filed an opposition to the petition to probate the will.

During the course of litigation, several motions were filed and argued before the court prior to trial. One such motion was for contempt filed by

---

[1] Although there is conflicting testimony, it appears the Nissan Juke may have originally been titled in both Moore and McDonald's names.

[2] Vivian and Delores Kline were Moore's youngest siblings, and Steve Thomas was her youngest brother.

5

the opponents against McDonald. At an earlier hearing on June 9, 2020, the trial court ordered McDonald to park both of Moore's vehicles in her garage and to provide Dawn Kline ("Dawn"), the co-administrator of the estate, with copies of the keys to the house, the garage, and both vehicles so that she could make an accounting of the estate. At the motion for contempt hearing on August 12, 2020, testimony revealed that McDonald had failed to provide Dawn with the key to the garage or the key to the Nissan Juke after several attempts to obtain those items. McDonald testified that the Nissan Juke was currently parked in a garage in Bossier City, Louisiana, and could not be removed until he paid past due costs to the storage facility. McDonald testified that he could not get the car back to Madison Parish to park it at Moore's house, as ordered by the trial court in its June 9, 2020 judgment.

In its ruling on the contempt motion, the trial court noted that at the June 9, 2020 hearing, McDonald testified that the Nissan was "garaged" but failed to tell the court that it was in a garage in Bossier City, Louisiana, where he could not move it. The court found that McDonald had specifically misrepresented the Nissan's location and his ability to move the Nissan to Moore's house at the prior hearing. The court also noted his lack of cooperation with his co-administrator. The trial court found McDonald to be in direct violation of the court's June 9, 2020 judgment and ordered McDonald to pay $1,000, court costs, and attorney fees for the motion for contempt.

Before the trial on the merits, the court heard argument for a motion for summary judgment filed by McDonald, which argued that there was no

genuine issue of material fact that the will is valid because he had affidavits from people who knew Moore attesting that the will is in her handwriting, satisfying the requirements of La. C.C. art. 1575. The opponents opposed the motion for summary judgment and attached affidavits stating that they were familiar with Moore's signature and the signatures on the will were not hers. The trial court denied the motion for summary judgment, finding a genuine issue of material fact existed in the matter.

The trial court also heard a *Daubert* motion for the opponents' expert witness, Adele Thonn ("Thonn"). She testified that she is an expert in forensic document examination but has not completed her certification as such. She completed two of the three requirements for certification and anticipated completing the third requirement in 2021. She has testified nine times in Louisiana courts and on every occasion has been recognized by the court as an expert in document examination. She has conducted examinations on over 180 samples, including several olographic wills. She testified about the potential rate of error, peer review and publication, and that her methodology can be tested. The trial court accepted her as an expert witness in the field of forensic document examination over McDonald's objection. As will be discussed more fully below, these pretrial rulings by the trial court make up three of the 16 assignments of error raised by McDonald.

At the trial on the merits, the court heard testimony from a number of witnesses. The opponents' expert witness, Thonn, testified that the

signatures on the will were "probably not" that of Moore.[3] McDonald testified that he did not witness Moore draft the entire will and did not witness her sign and date the will. Johnson testified that she spent the entire day with Moore but did not witness her draft the entire will. Both Johnson and McDonald gave extremely detailed accounts of Moore's final day but provided contradictory statements on cross-examination.

McDonald presented testimony from Edward Kline, Kamacha Guinn, Pitts, Gloria Williams, and Demetrius Brown-Whitney, all of whom knew Moore and testified that the signatures on the will looked like Moore's signature. In contrast, Moore's siblings, Frankie Solomon, Lee Thomas, Delores Kline, Joe Thomas, and Curtis Nash, all testified that the signatures on the will did not look like Moore's signature and that they found the existence of the olographic will leaving everything to McDonald to be suspect.

In its written reasons for judgment, the trial court took particular interest in the fact that the evidence did not indicate that Johnson, Dugano, and Moore all signed the will at the same time. The trial court noted that Moore's notary stamp is fixed on the will but that it is unclear who used the stamp or why. The court stated that the testimony of Moore, Johnson, and Dugano "seemed forced and made up." It found that they were trying too hard to paint a picture of what happened on the day Moore died.

The court further stated that the story by McDonald, Johnson, and Dugano of the last day of Moore's life did not seem factual or logical. It

---

[3] Thonn testified that the "probably not" standard is an industry standard and the highest standard in the industry is one of elimination.

also found the fact that the will was dated mere hours before Moore's death to be suspicious. The court noted that Moore prepared many other people's wills and found it suspicious that Moore would not tell her siblings she was drafting her own will, particularly considering she was allegedly altering her stated intentions of bequeathing her house to Vivian. The court noted the numerous spelling, grammatical, and factual errors contained in the will and the fact that it contains witnesses and a notary stamp, none of which are required for an olographic will.[4] The court stated that the best evidence was from Thonn, who concluded that Moore likely did not sign the will. The court concluded that McDonald had not met his burden of proof and ruled that the will was not a valid olographic testament. The will could not satisfy the requirements of a notarial testament for lack of an attestation clause and notary and was not presented as such by McDonald. This appeal followed.

## DISCUSSION

McDonald asserts numerous assignments of error in his appeal of the trial court's ruling, including pretrial rulings, evidentiary rulings, the trial court's specific findings of fact, and the finding that he failed to meet his burden of proof. For purposes of clarity and to avoid unnecessary duplication, we will address in chronological order the assignments of error arising as the litigation progressed, beginning with pretrial issues, followed by those arising during the trial itself, and finally the posttrial matters. Regarding McDonald's assignments of error:

### Pretrial Motions

---

[4] The trial court notes the inference was made at trial that McDonald and Johnson may have searched Moore's laptop for examples of wills in order to prepare a falsified olographic will.

The following assignments of error all involve motions and rulings made by the trial court before the trial on the merits in this matter.

- **The denial of the Proponent's Motion for Summary Judgment on August 19, 2020 was legal and consequential error.**

McDonald argues that the trial court erred in denying his motion for summary judgment.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Bess v. Graphic Packaging Int'l, Inc.*, 54,111 (La. App. 2 Cir. 11/17/21), 331 So. 3d 490. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d

876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L.Ed. 2d 130 (2014); *Bess*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230; *Bess*, *supra*.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).

11

McDonald filed a motion for summary judgment, asking the court to find as a matter of law that Moore's olographic will was valid and should be executed according to the law. He included the affidavits of Pitts, Kamacha Guinn, Johnson, Dugano, McDonald, and Demetrius Brown-Whitney, each of which stated that the olographic will was dated, written, and signed by Moore. In opposition, the opponents argued that the signatures on the olographic will are not from Moore, and thus, there is a genuine issue of material fact as to whether the will is valid. Their opposition included the expert report prepared by Thonn and affidavits from Frankie Solomon and Lee Thomas, each of which states that the signatures on the olographic will are not from Moore.

The trial court heard argument from both parties and excluded Thonn's expert report because it did not comply with La. C.C.P. art. 966(A)(4).[5] The trial court refused to exclude the opponents' affidavits, as they were properly included in the opposition to the motion for summary judgment. The court found that the affidavits were not simply conclusory and illuminated the conflict on the issue of whether the olographic will was written, dated, and signed by Moore.

The credibility of a witness is a question of fact, and in deciding a motion for summary judgment, the court must assume that all of the affiants are credible. *Sonnier v. Gordon*, 50,513 (La. App. 2 Cir. 4/13/16), 194 So. 3d 47. Assuming that all of the affiants are credible, there is clearly a

---

[5] McDonald's brief alleges, without elaboration, that the opponents failed to oppose his motion for summary judgment within the deadlines consented to by the parties and set by the court. The record reflects that the trial court noted that the court and the parties agreed to the summary judgment deadlines, and a review of the record reveals that the opponents filed their opposition to the motion for summary judgment within the time period allotted by the trial court. We find this allegation to be without merit.

12

genuine issue of material fact as to whether Moore wrote, dated, and signed the olographic will. Summary judgment is not appropriate, and this assignment of error is without merit.

- **The trial court's judgment holding McDonald in contempt is an abuse of discretion.**

McDonald argues that the trial court was not authorized by law to hold him in contempt, fine him $1,000, and order him to pay attorney fees. He argues that his actions did not merit contempt and that attorney fees are not permitted by law.

Constructive contempt is defined as "willful disobedience of any lawful judgment, order, mandate, writ or process of the court." La. C.C.P. art. 224(2). Willful disobedience is defined as an act or failure to act that is done intentionally, knowingly, and purposefully, without justification. The party seeking contempt must show that the alleged offender willfully disobeyed a direct order of the court prior to the contempt rule. *Chauvin v. Chauvin*, 46,365 (La. App. 2 Cir. 6/22/11), 69 So. 3d 1192. A trial court is vested with great discretion in determining whether a person is to be held in contempt and its decision will not be reversed absent an abuse of discretion. *Id*.

In the present case, the trial court issued a judgment on June 9, 2020, wherein McDonald and Dawn were appointed co-provisional administrators of the Succession of Moore. In the same judgment, McDonald was ordered to remove his personal property from Moore's home, uninstall and remove a generator from Moore's home, and both the Hummer and the Nissan Juke were ordered to be parked in the garage at Moore's home and not removed until further order of the court. On July 1, 2020, the opponents filed a rule

13

for contempt, arguing that Dawn had been unable to perform an inventory of items belonging to Moore's estate because of McDonald's noncompliance with the June 9, 2020 order.

The trial court held a hearing on the rule for contempt and determined that Dawn had attempted numerous times to obtain keys to the home, garage, and cars from McDonald. The court determined that the keys provided by McDonald were either faulty or had not been provided at all. The court found that McDonald's explanations for his failure to submit keys to the garage and the vehicles were meritless. Further, the trial court found that McDonald had misrepresented facts to the court during the June 9, 2020 hearing. At that hearing, the court noted that McDonald stated that the Nissan Juke was "garaged," but failed to specify that the it was parked in Bossier City, Louisiana, at a storage facility. McDonald could not remove the Juke from the storage facility until he paid past due costs, which he could not afford to pay.

Testimony elicited from McDonald at the contempt hearing makes clear that the Nissan Juke had been parked at a storage unit in Bossier City, Louisiana for many months. McDonald had not paid his storage fees for the Nissan and other cars, and the owners of the storage unit refused to allow him to move the cars until their bill was paid. When asked directly by the court, McDonald admitted that he had not parked the Nissan in Moore's garage, despite the court's June 9, 2020 order. The court found this omission or misrepresentation was a direct violation of the court's June 9, 2020 order. The court stated there was ample evidence that McDonald was

14

in contempt of court and ordered him to pay a $1,000 fine, plus court costs for the violation of contempt and attorney fees.

The evidence in the record is clear that McDonald violated the trial court's June 9, 2020 order, which ordered him to park the Nissan in Moore's garage. It appears that the trial court believed that Moore purposefully misled the court at the June 9, 2020 hearing when he testified that the Nissan was garaged but failed to alert the court that the Nissan was actually parked in Bossier City, Louisiana.

Under La. C.C.P. art. 227, a court may impose penalties upon a person adjudged guilty of contempt of court in accordance with La. R.S. 13:4611. La. R.S. 13:4611(1)(g) states that the court may award attorney fees to the prevailing party in a contempt of court proceeding. The statute specifically allows for the recovery of an award of attorney fees to the prevailing party in a contempt of court proceeding at the trial court's discretion. We find no error in the trial court's decision to do so in this matter.

We find McDonald's argument that the Covid-19 pandemic excuses his contempt to be unpersuasive. A trial court is vested with great discretion in determining whether a person is to be held in contempt, and we find no abuse of discretion in the trial court's finding that McDonald was in contempt of its judgment. For the foregoing reasons, this assignment of error is without merit.

**The Trial**

The following assignments of error all arise from rulings made by the trial court during the trial on the merits in this matter.

- **The finding that the Proponents have failed to meet their burden of proof is legal error.**

15

McDonald argues that the trial court erred in finding that he did not satisfy his burden of proof that the olographic will was valid after a trial on the merits. McDonald argues that he presented evidence, in the form of testimony from more than two credible witnesses, that the olographic will was written, signed, and dated by Moore.

There are two forms of testaments: olographic and notarial. La. C.C. art. 1574. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575. The only additional requirement is that the document itself must evidence testamentary intent to be a valid testament. *In re Succession of Rhodes*, 39,364 (La. App. 2 Cir. 3/23/05), 899 So. 2d 658, *writ denied*, 05-1044 (La. 6/3/05), 903 So. 2d 460.

The olographic testament must be proved by two credible witnesses testifying that the handwriting on the instrument is that of the testator. La. C.C.P. art. 2883; *In re Succession of Plummer*, 37,243 (La. App. 2 Cir. 5/14/03), 847 So. 2d 185, *writ denied*, 03-1751 (La. 10/10/03), 855 So. 2d 323. Credible witnesses include individuals who are familiar with the testator's handwriting, as well as handwriting experts. *Plummer*, *supra*. A credible individual familiar with the decedent's handwriting is competent to serve as a credible witness. *Id.* The trial court must satisfy itself, through interrogation or from the written affidavits or the depositions of the witnesses, that the handwriting and signature are those of the testator. La. C.C.P. art. 2883(A); *Succession of Olsen*, 19-348 (La. App. 5 Cir. 1/29/20), 290 So. 3d 727, *writ denied*, 20-00362 (La. 6/3/20), 296 So. 3d 1067.

The proponent of an olographic will has the burden of proving its authenticity and its compliance with all of the formal requirements of law.

16

La. C.C.P. art. 2903; *Olsen*, *supra*. In will contest cases, absent a finding of manifest error, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal. *Olsen*, *supra*. The factfinder is required to assess the credibility of all witnesses, whether they be lay people or experts, to determine the most credible evidence. Exert testimony is to be weighed the same as any other evidence, and the trier of fact can accept or reject, in whole or in part, any expert opinion. Such credibility determinations are factual issues to be resolved by the trier of fact and should not be disturbed on appeal absent manifest error. *James v. Robinson*, 38,774 (La. App. 2 Cir. 8/18/04), 880 So. 2d 975.

In the present case, McDonald had the burden of proving the olographic will was authentic and satisfied the provisions of La. C.C. Art. 1575, in that it was entirely written, dated, and signed by the testator. In support of his contention that the olographic will was valid, McDonald produced witness testimony from himself, Johnson, and Dugano about the circumstances surrounding Moore's last day. Johnson and McDonald's testimony regarding the day Moore died was in part extremely detailed, including the food they'd eaten and the movie they'd watched, and in part vague, including where and when Moore wrote each part of the alleged will. Dugano testified that she witnessed the will but did not witness Moore sign it. McDonald also elicited testimony from Edward Kline, Kamacha Guinn, Gloria Williams, and Demetrius Brown-Whitney, all of whom testified that they had known Moore for years and that the signatures on the alleged will appeared to be hers. These witnesses were not qualified as expert witnesses

17

but, rather, were called to testify regarding their general familiarity with Moore's signature.

The opponents presented a number of witnesses as well. Moore's younger sister, Vivian, testified that she was surprised that Moore would suddenly leave her house to McDonald, when Moore had always expressed a desire to leave the home to her. Vivian further testified that she was surprised that the will incorrectly stated that she and her brother, Steve Thomas, were Moore's youngest siblings. Vivian testified that Moore had other stepchildren and nieces and nephews with whom she was close. Finally, Vivian testified that she spoke to Moore on the day she died and Moore did not indicate that she was drafting a will.

Frankie Solomon ("Solomon"), also one of Moore's sisters, testified that she immediately questioned the authenticity of the will, specifically citing the misspelled words, incorrect grammar, and the handwriting that looked different than that of her sister. Solomon did not believe her sister, who had worked in a law firm, for a mayor, and was the Registrar of Voters for a number of years, would have made these kinds of mistakes. Solomon testified that Moore did not raise McDonald and that he did not live in her house. Solomon was emphatic in her belief that Moore did not sign the will.

Lee Thomas, Moore's brother, testified that he was surprised when he saw the will because it was handwritten and part of Moore's job had been to produce typed, professional wills for people. He found it suspicious that Moore had misnamed her two youngest siblings and that she had essentially transferred everything she owned of value to McDonald. He also found it suspicious that Moore would have called for Dugano, a woman she did not

know, to come witness the will, when many of her siblings and other family members lived nearby.

Delores Kline is also Moore's sister, and she had doubts about the veracity of the signatures on the will. Joe Thomas, one of Moore's brothers, testified that he did not think the signature on the will was from Moore. Curtis Nash, another of Moore's brothers, did not recognize the signatures on the will. In addition to the above witnesses, the opponents produced testimony from Thonn, an expert witness who testified that she did not believe it likely that Moore had signed the will.

As noted above, the factfinder must assess the credibility of both the expert and lay witnesses, and the factual findings of the trial court are accorded great weight and will not be disturbed on appeal absent manifest error. *Olsen*, *supra*. In its written reasons for judgment, the trial court summarized the witness testimony and stated specifically that it found the testimony of Johnson and McDonald to be unbelievable and unpersuasive. The court found Thonn's testimony to be the best evidence of whether Moore signed and dated the will.

The trial court clearly analyzed the evidence presented at trial, assessed the credibility of the witnesses, and determined that McDonald had not satisfied his burden of proving the will was written, signed, and dated by Moore. The trial court's judgment in this case was based on the credibility of the witnesses. A trial court judgment based on credibility can virtually never be manifestly erroneous, and thus, it is not subject to reversal on appeal. *Rosell v ESCO*, 549 So. 2d 840, 845 (La. 1989). We find no

19

manifest error in the trial court's findings, and for these reasons, this assignment of error is without merit.

**Evidentiary Rulings**

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Fields v. Walpole Tire Serv., LLC*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635. On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. *Fields*, *supra*. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. If there is no substantial effect on the outcome, then a reversal is not warranted. *Fields*, *supra*; *Crisler v. Paige One, Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125.

McDonald has argued a number of assignments of error related to evidentiary rulings made by the trial court in this matter. We will address each of these assignments of error below:

- **The trial court's denial of the Proponent's proffer by questioning the witness AnTonya Dugano on the issue that the Decedent told her that the document was her last will and testament was an abuse of discretion and a legal error.**

McDonald argues that it was error for the court to refuse to allow Dugano to testify that Moore told her that what she was signing was

20

Moore's will and to refuse to allow McDonald's counsel to proffer her testimony on the record. The following exchange happened on the record:

> Q. But now it's true that when you were in Bettye Moore's home that she told you the day she died, when she handed you this paper to sign, that this was her last will and testament?

> A: Yes.

> Q: And you heard that

> Mr. Haymer: Same objection.

> Q: out of her mouth?

> …

> The Court: Mr. Cannon, I believe when you tried to ask that on direct, I ruled that it was hearsay as well. So now on redirect, I'm going to rule again, that that's hearsay. You're asking her what Ms. Bettye Moore said, did Ms. Bettye Moore say that was her last will and testament. And that's hearsay. So I've ruled on direct it was, now I've ruled on redirect that it is. You can't ask her that. That's hearsay. The objection is sustained.

> …

> The Court: Mr. Cannon, we can't proffer either because every time I've tried to offer you that, we're just putting in evidence that I've already ruled is not admissible.

> Mr. Cannon: But, that's the purpose of the proffer. It's not so that the Court would have evidence before it. That's the purpose of the proffer, so that a Court of record will look at it and see that Ms. Dugano has testified that Ms. Bettye Moore, she said, told her this was. We, we never did say that Ms. Bettye, we never did say that Ms. Dugano was testifying that she saw Bettye write the will. But that's, that's not the point. The point is that Ms. Dugano said that Bettye Moore told her that, this is my will. That's the point.

La. C.C.P. art. 1636(A) states that when the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. This court has held that

La. C.C.P. art. 1636 is mandatory, not discretionary. However, the trial court has the discretion to receive the proffer in full or to require a statement setting forth the nature of the evidence. The purpose of requiring a proffer is to preserve excluded evidence so that the testimony or evidence is available for appellate review of a trial court's erroneous ruling. *McLean v. Hunter*, 495 So. 2d 1298 (La. 1986). It is error to deny a party both forms of proffer. *Gulf Outlet Marina, Inc. v. Spain*, 02-1589 (La. App. 4 Cir. 6/25/03), 854 So. 2d 386, *writ denied*, 03-2075 (La. 11/7/03), 857 So. 2d 497.

The above exchange makes clear that although the trial court did not allow McDonald's counsel to make a complete record of the testimony he sought to proffer, it did effectively allow his counsel to make the equivalent of a statement setting forth the nature of the excluded testimony. Dugano testified on the record before an objection could be lodged that Moore told her that what she was signing was her last will and testament. McDonald's counsel then told the trial court, on the record, the testimony that he intended to elicit from the witness. We find this is sufficient to comply with La. C.C.P. art. 1636. *See Gulf Outlet*, *supra*. This assignment of error is without merit.

- **The trial court's ruling that the statements of Lee Thomas shortly after Bettye's death about the Will and its chain of custody were excluded as inadmissible hearsay testimony and that the Proponent would not be allowed to proffer is a legal error.**

This assignment of error references the testimony given by McDonald during the trial. The question by McDonald's counsel was as follows:

Q. Now Mr. Lee Thomas, you talked to Mr. Lee Thomas who is a party to this case?

A: Yes, sir.

Q: And what did Mr. Lee Thomas tell you?

Opposing counsel objected to this testimony as hearsay, and the trial court sustained the objection. Opposing counsel further objected to McDonald's counsel continuing the questioning as a proffer, arguing that it would result in the trial court hearing the hearsay testimony. The trial court agreed and did not allow McDonald's counsel to proffer the testimony from McDonald about Lee Thomas.

Trial courts are granted broad discretion in their evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Fields*, *supra*. We do not find the trial court's ruling that the above testimony was hearsay to be an abuse of discretion. Lee Thomas testified in the trial on this matter and McDonald's counsel had the opportunity to ask him directly what he told McDonald after Moore's death.

As discussed above, it is error not to allow a party to proffer in full or give a statement setting forth the nature of the evidence. However, we find that this error was harmless because the trial court was within its discretion in disallowing the testimony as hearsay. *Gulf Outlet*, *supra*. Under the circumstances of this case, the trial judge's refusal to allow the proffer is harmless error, and this assignment of error is without merit.

Next McDonald asserts assignments of error focused on the competency of lay witnesses to testify regarding the validity of the handwriting of the decedent in the testament being challenged. Specifically:

- **The trial court's ruling that lay testimony was not legally probative of the testator's handwriting and signature was legally incorrect and interdicted the entire fact-finding process of the trial.**

- **The trial court's ruling that even if a layperson can look at writing and recognize it as being the Decedent's, that such testimony is excluded as a legal and consequential error.**

- **The trial court's ruling that unless the Proponent of the Will or any other witness could testify that they actually saw the Decedent write on the pictures that the writing is not admissible as evidence is an abuse of discretion and a legal and consequential error.**

- **The trial court's ruling that a lay witness was not legally competent to testify on the issue of the handwriting of the Will was legal and consequential error.**

McDonald refers the court to that part of the transcript where he sought to introduce photographs of himself and Moore that contain handwriting labeling the photographs. The court allowed McDonald to introduce the photographs as evidence of his relationship with Moore but refused to allow McDonald to testify that the handwriting on the photographs was from Moore because he did not witness Moore write on the photographs. The court found that such testimony would be hearsay. Further, upon objection from opposing counsel, the court ruled that it would not allow McDonald's counsel to elicit the hearsay testimony as part of a proffer.

McDonald further refers this court to that part of the transcript where several witnesses were instructed by the court that they can say that they recognize the signature of Moore but they cannot testify that Moore wrote the will because they did not witness her write the will.

Despite his arguments with regard to the above assignments of error, McDonald was able to present multiple witnesses who testified that they believed the signature on the will to be that of Moore. They each testified that they knew Moore for a number of years and would be able to recognize

her handwriting. They then testified that they recognized the signatures on the will and that they belonged to Moore. We cannot say it was error in this case for the trial court to rule that the witnesses, who did not witness Moore draft the will or write on the proffered photographs, could testify that they recognized Moore's signature or believed an item had been written by her but not testify that she definitely wrote something when they did not witness it. The trial court clearly weighed the evidence presented at trial and placed an emphasis on the expert witness's testimony regarding the signatures on the will. Any error on this count would be harmless error.

As noted above, the trial court's refusal to allow a proffer from McDonald on these issues is error. However, the argument on the record between counsel regarding the hearsay exceptions did effectively allow McDonald's counsel to make the equivalent of a statement setting forth the nature of the excluded testimony for the record. McDonald intended to testify that the handwriting on the photographs he presented was from Moore and the various witnesses intended to testify that the signatures on the will were from Moore. We find this is sufficient to comply with La. C.C.P. art. 1636; *Gulf Outlet*, *supra*.

For the above reasons, these assignments of error are without merit.

McDonald asserts as an additional assignment of error that he was not fully allowed to cross-examine the opponents' handwriting expert, assigning as error:

- **The trial court's ruling, which denied Appellant the opportunity to cross examine Ms. Thonn on her methodology and underlying data, was an abuse of discretion and denied the Appellant the right to impeach the qualification of Ms. Thonn, her credibility and the weight of Ms. Thonn's opinion.**

25

McDonald directs this court to that portion of the record where the trial court refused to allow McDonald's counsel to ask Thonn to conduct a handwriting analysis while testifying at the trial. The trial court stated:

> You could ask her opinion, Mr. Cannon. And you're correct on that, but to ask her to perform an examination, you've not hired her. And so, you, I'm not gonna allow that. I don't think that's proper. But you can question her regarding a document. And she can give an opinion but she's not your client and I believe she's already clearly stated the exemplars that she used and how and when they were provided to her.

McDonald also directs the court to the *Daubert* hearing of Thonn, wherein the trial court directed him to limit his questioning to her qualifications as an expert and wait until she had been certified as an expert before cross-examining her on her methodology in this case. Finally, McDonald refers this court to the ruling of the trial court that accepted Thonn as an expert in forensic document examination.

The record reflects that McDonald's counsel was given the opportunity to cross-examine Thonn at the *Daubert* hearing and again at trial. McDonald questioned Thonn's methodology and the exemplars she was provided and used in creating her expert report. Insofar as McDonald objects to the trial court's ruling, we find no abuse of discretion in not allowing McDonald's counsel to ask Thonn to perform an impromptu handwriting analysis during trial. This assignment of error is without merit.

Regarding the trial court's exclusion of testimony by Moore's treating physician regarding Moore's ability to read, write, date and sign her will, McDonald assigned as error:

- **The trial court ruling which excluded the testimony and chart of Dr. Lawrence Chenier, Bettye's treating doctor, on rebuttal that Bettye could read, write, date and sign the Will on the day she**

**passed away violated the Appellant's statutory right to present evidence on rebuttal and to his day in court on this issue.**

McDonald argues that it was error for the trial court to refuse to allow testimony from Moore's treating physician. Moore's competency was not raised as a challenge to the olographic will, nor was her susceptibility to being subjected to undue influence. The trial court ruled that the doctor would have no firsthand knowledge on whether Moore signed the will, and thus, his testimony would be irrelevant. The trial court noted that McDonald did not include the doctor in the pretrial conferences or his witness list. We cannot say this ruling was an abuse of discretion, as the issue at trial was whether Moore signed and dated the will, not her health, competency, or susceptibility to undue influence on the day she died. *Fields*, *supra*. This assignment of error is without merit.

McDonald next argues and assigns as error that his counsel was prevented from questioning Solomon about her affidavit that was attached to the opponent's opposition to the motion for summary judgment.

- **The trial court's rulings denying Appellant the opportunity to cross-examine and impeach the credibility of Opponent, Frankie Solomon, intrinsically and with statements that she had made in opposing affidavits and to proffer were legal and consequential error.**

The trial court found that the best evidence was a live witness and asked McDonald's counsel to question her rather than refer to her affidavit. On his objection, the court ruled that the affidavits, which had not been admitted as exhibits at trial, could not be used to impeach the witness. McDonald was otherwise able to cross-examine Solomon. We cannot say this ruling was an abuse of discretion. *Fields*, *supra*. This assignment of error is without merit.

**Findings of Fact**

McDonald asserts two assignments of error regarding the trial court's findings of fact:

- **The trial court's determination that there are many discrepancies in the testimony of the witnesses for the Proponent, but it is clear to the Court from their testimony that none of the witnesses observed Bettye write, date, or sign the purported Olographic Will is not supported by the evidence and is manifest error.**

- **The trial court erred when it ruled that the testimony and opinions of Ms. Adele A. Thonn, an uncertified forensic examiner, were the best evidence of the handwriting and signature of the Decedent to prove that the will was invalid.**

Both of the above assignments of error arise from the trial court's written reasons for judgment after the trial on the merits.

The standard of review for factual determinations is one of manifest error. Thus, for reversal, an appellate court must find that a reasonable factual basis does not exist for the finding and that the finding was clearly wrong. *Brandt v. Engle*, 00-3416 (La. 06/29/01), 791 So. 2d 614; *Nestor v. Louisiana State Univ. Health Sciences Ctr. in Shreveport*, 40,378 (La. App. 2 Cir. 12/30/05), 917 So. 2d 1273, *writ denied*, 06-0221 (La. 4/24/06), 926 So. 2d 551. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *McWilliams v. Courtney*, 41,725 (La. App. 2 Cir. 12/13/06), 945 So. 2d 242.

Both of the above findings by the trial court were made within the context of its discussion of the various witnesses who testified at trial. The court stated that it found McDonald and Johnson's testimony to be unbelievable and problematic. In contrast, she found the third-party,

uninterested expert witness testimony as to the veracity of the signatures on the will to be compelling and persuasive. The court heard two days of testimony from many witnesses, who provided contradictory testimony regarding the day Moore died and the validity of the olographic will.

The factfinder is required to assess the credibility of all witnesses, whether they be lay people or experts, to determine the most credible evidence. Such credibility determinations are factual issues to be resolved by the trier of fact and should not be disturbed on appeal absent manifest error. *James*, *supra*. We cannot say that the factual findings of the trial court listed in the above assignments of error were manifestly erroneous, and as such, these assignments of error are without merit.

**Post-Trial Motions**

The following assignment of error arises from the rulings made by the trial court following the trial on the merits.

- **The trial court's adjudication that each party will bear their own costs is an abuse of discretion.**

In its reasons for judgment, the trial court ordered "each party to bear their own costs." McDonald argues that the judgment that each party should bear its own costs is an abuse of discretion because he believes that he should not be charged with costs individually. Instead, McDonald argues that the Succession of Moore should bear his portion of the costs for the trial and this appeal because he was defending the will and seeking to preserve the estate.

Louisiana law provides that except otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art. 1920. Upon review, a trial

29

court's assessment of costs can be reversed only upon a showing of an abuse of discretion. *Hodnett v. Hodnett*, 36,532 (La. App. 2 Cir. 9/18/02), 827 So. 2d 1205.

Further, while costs incurred in a proceeding defending a last will and testament are generally assessed to the succession, costs may be allocated to a succession representative individually when that representative has a significant personal interest in the outcome of the will contest. *Succession of Anderson*, 26,947 (La. App. 2 Cir. 5/10/95), 656 So. 2d 42, *writ denied*, 95-1789 (La. 10/27/95), 662 So. 2d 3; *In Succession of Reno*, 15-0854 (La. App. 1 Cir. 9/12/16), 202 So. 3d 1147, *writ denied*, 16-2106 (La. 2/10/17), 215 So. 3d 701). We discern no abuse of the trial court's discretion in assessing that each party bear his own costs in the trial of this matter or that McDonald's portion of the costs be assessed to him individually. This assignment of error is without merit.

- **The trial court's denial of Appellant's Motion for New Trial is an abuse of discretion based upon an erroneous interpretation of a rule of law that the lay testimony was inadmissible to prove the handwriting and signature of the Decedent and that the opinions of forensic examiner Ms. Thonn were the best evidence that the Will was not valid.**

McDonald argues that the trial court's denial of his motion for new trial was an abuse of discretion because it was based on an erroneous interpretation of law and an improper finding of fact by the trial court. McDonald contends that the trial court should have granted him a new trial because it incorrectly ruled that lay witnesses could not definitively testify that the will was written by Moore when they did not witness Moore draft or sign the will. He further contends that the trial court was in error for finding that Thonn's testimony was the best evidence that the will was not valid.

A new trial shall be granted upon contradictory motion of any party when the judgment appears clearly contrary to the law and the evidence or when the party has discovered new evidence which he could not have obtained before or during trial. La. C.C.P. art. 1972. A new trial may be granted if there is good ground therefor. La. C.C.P. art. 1973. The denial of a motion for new trial is considered under the abuse of discretion standard of appellate review. *In Re Robinson*, 47,380 (La. App. 2 Cir. 1/16/13), 135 So. 3d 670. When reviewing the denial of a motion for new trial, unless an abuse of discretion can be exhibited, the trial court's decision will not be reversed. *Green v. ABC Rentals*, 51,461 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1165.

McDonald filed a motion for new trial, which was denied by the trial court. The trial court issued reasons for judgment in denying McDonald's motion for new trial, noting that McDonald's motion simply restates his arguments previously considered at the trial on the merits. The trial court noted that the motion mischaracterizes the court's rulings regarding the admission of certain witness testimony. The trial court found that there was no showing presented that the judgment was contrary to law and evidence or that the outcome of the trial had been changed.

A review of McDonald's motion for new trial reveals that it is a restatement of the arguments made at the trial on the merits and arguments regarding the evidentiary rulings made by the court at the trial, as noted by the trial court in its reasons for judgment denying the motion for new trial. There is nothing that would indicate an abuse of discretion for the trial court

31

to deny the motion for new trial.  We find this assignment of error to be without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Johnny Cardelle McDonald to pay all costs.

**AFFIRMED**.